# IN THE COURT OF APPEALS OF IOWA

No. 16-0650
Filed November 9, 2016

**IN THE INTEREST OF A.F. AND M.F.,**
**Minor Children,**

**A.M., Mother,**
    Petitioner-Appellee,

**J.F., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Glenn E. Pille, Judge.


A father appeals the termination of his parental rights to his two children under Iowa Code chapter 600A. **AFFIRMED.**


Hope Wood, Des Moines, for appellant father.

Julia L. Roose of Roose Law Firm, P.L.L.C., Johnston, for appellee mother.

Chira Corwin of Corwin Law Firm L.L.C., Des Moines, guardian ad litem for minor children.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A father appeals the district court's order terminating his parental rights to his two children: seven-year-old A.F. and six-year-old M.F. The father contends he did not abandon the children within the meaning of Iowa Code section 600A.8(3) (2015). He further argues the court could not terminate his parental rights because the ruling did not include a finding that termination was in the best interests of the children.

We find clear and convincing evidence supports the court's decision to terminate for abandonment under section 600A.8(3). And although the father is correct that the court did not make an express best-interests determination, the court's omission does not warrant a reversal because we find that determination implicit in the ruling. Moreover, on our de novo review of the proceeding, we agree termination is in the best interests of the children because the father's absence from their lives has stifled the development of any meaningful parent-child bond.

## I. Facts and Prior Proceedings

The mother and father have two children, A.F. and M.F., who were born in 2008 and 2009. The four lived together in a house owned by the father's grandmother in Newton. In 2012, the mother ended the relationship with the father after she discovered he was abusing prescription pain medication and found drug paraphernalia in the garage.

The mother initially allowed the father to visit the children under either her supervision or the supervision of his parents. Then, after a few months, the mother moved to Creston to live with her parents. At her own cost, the mother

continued to facilitate visitation, driving the children to the home of the father's parents every few weeks. The father never travelled to Creston to visit the children. He explained: "I didn't have my driver's license. My parents won't— they didn't want to get in the middle of it, so they wouldn't take me. I didn't really have anybody I could count on to take me . . . ."

In September 2012, the mother cut off the visits because "nothing had really changed on his part." After some time had passed, the mother met with the father and provided him a list of requirements to fulfill before she would allow him to visit the children, including that he maintain steady employment and complete treatment for substance abuse.[1] Although the mother disallowed contact between the children and the father, she kept up her relationship with the father's parents, and the children continued to spend time with them.

In February 2014, the father was incarcerated for the drug-related offense of failure to affix a tax stamp. He was placed on work release in May 2015. On September 1, 2015, approximately three years after the father's last contact with the children, the mother filed a petition to terminate his parental rights. Shortly thereafter, the father was arrested for a probation violation and returned to prison to serve the remainder of his sentence.[2]

The termination hearing took place on March 22, 2016. Both the mother and the father testified, as did the mother's paramour, Alex. The mother stated the father had not provided the children financial support—outside of a single

---

[1] The father testified that the note continued: "I suggest you contact the State when you have done all of these things, and they will decide if you are fit to be in your children's lives."

[2] The father expected to be released in July 2016.

instance in which he wired her approximately fifty dollars—nor had he sent the children cards or gifts. Because of the father's complete absence from their lives in the past few years, the children did not know who he was, according to the mother. She told the court she and Alex planned to marry in the near future and, if the father's parental rights were terminated, Alex would like to adopt the children.

The father acknowledged his drug abuse but stated his rights should not be terminated because the mother had prevented him from contacting the children. He testified he called the mother at some point after the visitations ceased and she hung up after telling him not to call again. The father claimed he could not reach the mother after that incident,[3] but he also admitted he knew his parents were in contact with her. He testified he did not seek court-ordered visitation because he didn't know he had the right to do so.

The district court found the father's efforts to make contact with the children over the years were not sufficient to prevent a finding of abandonment and did not fault the mother for prohibiting visitation between the father and children "in view of the fact that she perceived the children were in danger because of [the father's] situation." Further, the court questioned the father's credibility, finding the father's testimony that he was unable to contact the mother unconvincing considering the mother's relationship with the father's family. After

---

[3] Despite the father's claims he could not reach the mother, he contested the mother's allegation that he never sent cards or gifts to the children, stating he had occasionally sent them cards. The father did not specify where he sent these communications and acknowledged: "I still don't think they probably have gotten any of them anyway."

the hearing, the court entered an order terminating the father's parental rights to both children. The father now appeals.

## II.    Standard of Review

We review de novo termination-of-parental-rights proceedings under chapter 600A. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). We give the district court's fact findings weight, particularly regarding witness credibility, but we are not bound by those findings. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

The mother must prove by clear and convincing evidence the father has abandoned the children. *See* Iowa Code § 600A.8(3); *see also In re G.A.*, 826 N.W.2d 125, 128–29 (Iowa Ct. App. 2012). She must also prove termination of the father's parental rights is in the best interests of the children. *See R.K.B.*, 572 N.W.2d at 602. Although the best interests of the children are "paramount" in our analysis, we give the interests of the parents "due consideration" as well. *See* Iowa Code § 600A.1.

## III.    Analysis

**Abandonment.** The father argues he did not abandon the children as contemplated by section 600A.8(3)(b) because (1) he has been physically unable to visit the children due to his lack of a driver's license and subsequent incarceration and (2) the mother prevented him from all contact with the children. Under the Iowa Code, abandonment of a minor child is a parent's rejection of "the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide the support of the child or to communicate with the

child." *Id.* § 600A.2(19). We consider the parent of a child who is six months or older to have abandoned the child unless the parent maintains "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means," and—if the parent has not lived with the child in the year before the termination hearing—by (1) visits with the child at least once a month when physically and financially able and when not prevented by the child's custodian or (2) regular communication with the child or their custodian when physically and financially unable to visit or when visits are prevented by the child's custodian. *Id.* § 600A.8(3)(b).

We first consider the father's economic contributions to the support of the children. At the termination hearing, the mother testified the father had contributed a total of approximately fifty dollars to the support of the children since their relationship ended in 2012. The father conceded he had not provided support but attributed this failure to the mother, arguing she would not accept money from him. He testified he unsuccessfully attempted to give money to the mother after his work release from prison by contacting her through Facebook, calling her lawyer, and using his own mother as an intermediary. He stated that before that time, he "had no way to get a hold of her" to give her money. He went on to assert that his rights could not be terminated for failure to provide support because the court had not ordered him to pay child support.

The predicate language of section 600A.8(3)(b) requires a parent to contribute a reasonable amount to the support of the children to prevent a finding of abandonment, regardless of whether the district court has ordered the parent

to pay support. *See id.*; *see also In re W.W.*, 826 N.W.2d 706, 710–11 (Iowa Ct. App. 2012). Like the district court, we are skeptical of the father's testimony on the issue of his inability to contact the mother. And even if we credit the father's testimony that he attempted to provide support after his work release from prison in May 2015, we fail to see what prevented him from sending more than fifty dollars in the two and one-half years between his separation from the mother and his work release. Although the father claims he did not have a way to contact the mother, he twice contacted the mother through Facebook after she filed the termination petition. Further, he admits his parents were in regular contact with the mother. The father does not explain why he could not send support payments through his parents.

But even if the father's failure to financially provide for the children did not end our analysis, we would still find the father abandoned the children under section 600A.8(3)(b) for failing to visit or communicate with the children since 2012. First, the father "cannot use his incarceration as a justification for his lack of relationship with the child. This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). It was the father's substance abuse that ended his relationship with the mother. The father admittedly continued to use illicit substances and was ultimately incarcerated after a drug-related conviction. The father cannot rely on his incarceration as an excuse for his failure to maintain contact with his children. *See C.A.V.*, 787 N.W.2d at 101–02.

Second, we find the mother did not prevent the father from visiting the children within the meaning of section 600A.8(3)(b). Although the mother conditioned contact with the children on the father completing substance-abuse treatment and procuring steady employment, we agree with the district court that the mother's requests were reasonable considering the father's history. Notably, the father made no effort to comply with the mother's requests. Taken as a whole, the facts do not support the father's claim the mother prevented him from visiting the children. *See G.A.*, 826 N.W.2d at 129 (concluding mother conditioning visitation with father upon completion of a clean drug test did not constitute "preventing" contact under 600A.8(3)(b)); *see also In re K.M.*, No. 14-1374, 2015 WL 1849508, at *2, *5 (Iowa Ct. App. Apr. 22, 2015) (finding when the father had history of violence toward the mother, she did not prevent contact by failing to respond to several text messages from the father over the course of a year requesting visitation).

Moreover, even were we to find the mother had prevented visitation, the father would still be required to maintain regular communication with the children or the mother or, at a minimum, make more than a marginal effort to communicate with them. *See* Iowa Code § 600A.2(19); *id.* § 600A.8(3)(b)(2). The father testified in generalities that he was unable to reach the mother, but he failed to identify specific attempts at communication with the children in the three years between his last visit and the initiation of the termination proceedings.[4] The father knew his parents were in contact with the mother and children but not

---

[4] The only exceptions were the phone call in which the mother told him not to call again and the incident in which the mother provided conditions for the father to fulfill before visitations could resume.

once did he try to communicate through his parents. Nor did the father seek to re-establish contact with the children through the court system. We find the father's negligible efforts to maintain contact with the children insufficient to prevent a finding of abandonment under section 600A.8(3)(b).

**Best Interests.** The father next contends we should reverse the district court's order because it did not include a finding termination would be in the best interests of the children as is required in a private termination proceeding. While the court did not specifically mention best interests in its analysis, it did express concern about the children's safety under the supervision of the father, observing: "[The father] has not seen his children since 2012. That is significant. That is way too long. Despite his excuses as given on the record herein, the court finds that is way too long for these children." We conclude the best-interests determination was implicit in the court's decision to terminate the father's parental rights. *See In re D.R.*, No. 09-1583, 2009 WL 4842809, at *1 n.1 (Iowa Ct. App. Dec. 17, 2009) (upholding termination under chapter 232 even in absence of explicit finding on the best-interests issue).

In our de novo review, we find termination is in the best interests of the children. The children's best interests require that the father "affirmatively assume[s] the duties encompassed by the role of being a parent." *See* Iowa Code § 600A.1. We consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication, and demonstration of the establishment and maintenance of a place of importance in the child's life." *See id.* Considering the father's anemic efforts to re-establish contact with the children, we cannot find he

"affirmatively assumed" any parenting duties. The father has been out of touch with these children for four-plus years—more than half of their young lives. Due to the complete lack of communication with the father, the children do not even know who he is. Further, the father has issues with substance abuse and criminal activity. He has thus far failed to demonstrate a desire to change his destructive behavior, which greatly increases the potential for harm to the children while in his care. *See In re M.B.W.*, No. 12-2161, 2013 WL 3273170, at *3 (Iowa Ct. App. June 26, 2013).

Accordingly, we affirm the decision terminating the father's parental rights.

## IV. Appellate Attorney Fees

Finally, the mother asks that we order the father to pay her appellate attorney fees and the costs of this appeal. She reasons that once the father is released from prison, he expects to work as a carpenter and while she has borne the cost of her own attorney and the guardians ad litem for the father and the children, the father has not been required to pay any attorney fees throughout the proceedings. The mother cites a dissolution-of-marriage case in support of her request; she does not cite any authority providing for a similar award of attorney fees in a termination action under chapter 600A. The father responds that he would be unable to pay the mother's appellate attorney fees, noting the court appointed him counsel at State expense due to his indigency.

The payment of attorney fees in this kind of action is governed by statute. The parties do not identify a provision directly addressing the situation at hand: the requirement of an indigent respondent to pay the petitioner's attorney fees on

appeal. But Iowa Code section 600A.6B(4) does address the payment of the indigent respondent's attorney fees on appeal:

> If the parent against whom the petition is filed appeals a termination order . . . the person who filed the petition . . . shall not be responsible for the payment of attorney fees for services provided by counsel appointed . . . in the appellate proceeding. Instead the appointed attorney shall be paid reasonable attorney fees as determined by the state public defender from the indigent defense fund . . . .

*See also* Iowa Code § 600A.6B(1) (requiring petitioner to pay attorney fees for respondent's court-appointed attorney in juvenile court and appellate proceedings filed by petitioner). Given the indigency exceptions to the payment of attorney fees contained in section 600A.6B and the lack of supporting authority cited by the mother, we find the father is not responsible for payment of the mother's appellate attorney fees but will be assessed the costs of the appeal. *See* Iowa Rs. App. P. 6.903(2)(g)(3), 6.1207.

**AFFIRMED.**