**IN THE COURT OF APPEALS OF IOWA**

No. 16-0480
Filed November 9, 2016

**IN THE INTEREST OF A.V. and C.V.,**
**Minor Children,**

**B.R.H., Mother,**
        Petitioner-Appellant,

**E.J.V., Father,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Story County, Stephen A. Owen,

District Associate Judge.


        A mother appeals the juvenile court's dismissal of her petition to terminate

the father's parental rights to their two children.  **AFFIRMED.**


        Dorothy L.C. Dakin of Kruse & Dakin, L.L.P., Boone, for appellant mother.

        Larry W. Johnson of Walters & Johnson, Iowa Falls, for appellee father.

        Megan Rosenberg of Cady & Rosenberg, P.L.C., Hampton, guardian ad

litem for minor children.


        Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

A mother appeals the dismissal of her petition to terminate the father's parental rights to their two children, nine-year-old A.V. and six-year-old C.V., under Iowa Code chapter 600A (2015). The mother contends termination is warranted because (1) the father abandoned their children within the meaning of section 600A.8(3)(b) and (2) the mother did not prevent the father from having contact with the children. She also argues termination is in the children's best interests. Because the father made more than marginal efforts to reestablish contact with his children and was denied the opportunity to be heard on the issue, we conclude the mother has failed to prove abandonment under chapter 600A. Accordingly, we affirm.

## I.      Facts and Prior Proceedings

A.V. and C.V. were born while the mother and father were married. The parents separated in 2012, and in June 2013, their divorce decree awarded physical care to the mother and visitation to the father. In exercising his visitation, the father saw A.V. and C.V. every other weekend. The relationship between the mother and father was antagonistic after their separation, and interactions between them at visitation exchanges regularly escalated into heated arguments and threats in the presence of the children. Outside of these encounters, the father persisted in intimidating and insulting the mother through voicemails and text messages. In July 2013, the mother reported the communications from the father to the police, and a warrant for the father's arrest on the charge of third-degree harassment was issued.

On December 23, before the father was arrested on the harassment charge, the mother obtained a temporary civil protective order against the father under Iowa Code chapter 236. A provision in the order prevented the father from having any contact with the children and provided that visitation would be addressed at an upcoming hearing on the protective order. The mother allowed the father a final visit with the children on December 25. In early January, authorities served the father with the temporary protective order and arrested him on the harassment charge. After a hearing under chapter 236 that the father failed to attend,[1] the court issued a final protective order. The order included this provision: "Respondent will not be granted visitation until he requests it and a hearing is then held. The respondent shall not otherwise contact these children and shall not contact the protected party about visitation except as provided in this order." Shortly thereafter, the father was convicted of third-degree harassment, and the court entered a criminal no-contact order prohibiting contact with the mother until 2019.[2]

In the next year and a half, the father petitioned the court that issued the protective order four times to reestablish visitation with the children. The district court dismissed the father's request without hearing each time. The father first filed a motion with the court in March 2014, two months after the court issued the final protective order, requesting "the protective order be enlarged/modified to reflect the visitation schedule in the decree of dissolution." The court set a hearing in the matter but then canceled it, stating the matter involved

---

[1] The father claimed he did not come to the hearing because he believed it had been continued to allow him time to obtain counsel.
[2] The criminal no-contact order did not address the father's contact with the children.

"enforcement of visitation" under the decree of dissolution, which was issued in a different county. The court ordered "any future enforcement of visitation" applications to be filed in the dissolution matter, "the more appropriate place and venue to decide issues involving visitation and custody." In response to each of the father's subsequent requests to modify the protective order, the mother resisted, citing the district court's prior dismissals of the father's requests.[3]

In December 2014, the mother moved to extend the civil protective order. After a hearing, the court extended the order for another year. Again, the father failed to attend the hearing. Less than a week later, the father sent a text message to the mother to ask where he could pick up the children for visitation, and he was arrested for violating the criminal no-contact order. On June 25, 2015, just two days after the court's dismissal of the father's fourth application to modify the protective order, the mother filed a petition to terminate the father's parental rights.

The juvenile court held the termination hearing on February 10 and 11, 2016.[4] The majority of the mother's evidence concerned the father's violent and verbally-abusive tendencies during their marriage and in the months after the divorce and the welfare of the children during visitation with the father. The father contested many of the mother's allegations. He emphasized the mother's combative behavior and his own attempts to reinstate visitation with his children

---

[3] After the district court's first dismissal, in March 2014, the mother proposed a modified visitation schedule to the father. At the termination hearing, the parties disputed the details of the proposed arrangement. They did not reach an agreement on visitation, and the father continued to pursue the matter through the courts.

[4] The father did not appear at the start of the termination hearing, but he arrived around midday on the 10th.

through the court system. The juvenile court expressed skepticism concerning the credibility of both parents, noting: "The court is particularly struck by the fact that the [mother] and [father's] testimony is completely opposed. Both parties were quite willing to maximize the failings of the other party while simultaneously minimizing their own actions or omissions." The court continued:

> Despite the volume of testimony offered by the [mother] it merely boiled down to the fact that the [father] is, to say the least, a poor father and an even worse co-parent to the children during the parent's marriage and after it was dissolved. It did little if any to support the core of the [mother's] case which, despite alleging all statutory grounds for termination, was really focused on a contention that the [father] has abandoned the children.

In an oral statement, the guardian ad litem (GAL) recommended termination, reasoning the father abandoned the children by failing to make more of an effort to have the protective order modified to allow contact with the children. The GAL also believed termination would be in the children's best interests.

The juvenile court dismissed the mother's petition to terminate the father's parental rights. In its detailed order, the court recounted at length the father's unsuccessful attempts to modify the civil protective order, describing the father as "caught in a procedural morass for which he has no effective relief or procedural rights or real opportunities." Moreover, the court faulted the mother for her motions to dismiss the father's requests to modify the order. The court found the mother "engaged in a degree of misdirection calculated solely to her benefit" by referring the court to its previous dismissals of the father's requests rather than acknowledging the language of the original protective order. Due to this behavior, the court found the mother had "actively engaged in a course of

conduct over a protracted period of time to deny [the father] contact and visitation," which prevented a finding of abandonment.

The court acknowledged it could not address whether termination was in the children's best interests because the mother had not established statutory grounds for termination. But despite this acknowledgement, the court cautioned that nothing in its ruling "should be read or interpreted to justify, excuse, minimize or reduce" the father's responsibility for his dangerous behavior toward the children and their mother. The court opined the father "should not be around these children without visitation being fully supervised."

The mother now appeals.

## II. Standard of Review and Statutory Burden

We review termination-of-parental rights proceedings under chapter 600A de novo. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). Although we are not bound by the juvenile court's findings of fact, we do give them weight, particularly when considering the credibility of witnesses. *See id.*

The parent seeking termination has the burden to prove with clear and convincing evidence that the other parent has abandoned the children. *See* Iowa Code § 600A.8(3); *see also In re G.A.*, 826 N.W.2d 125, 128–29 (Iowa Ct. App. 2012). The petitioning parent also has the burden of proving the termination is in the best interests of the children. *In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998). The best interests of the children are "paramount," but we also give "due consideration" to the interests of the parents. *See* Iowa Code § 600A.1.

### III.     Analysis

The Iowa Code defines abandonment of a child as a parent's rejection of "the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide the support of the child or to communicate with the child." *Id.* § 600A.2(19).  To avoid a finding of abandonment, the parent of a child who is six months or older must maintain "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means," and—if the parent has not lived with the child in the year before the termination hearing—by (1) visiting the child at least once a month when physically and financially able and when not prevented by the child's custodian or (2) when physically or financially unable to visit or when prevented by the child's custodian, regularly communicating with the child or their custodian.  *Id.* § 600A.8(3)(b).

The mother argues she established the statutory ground of abandonment because the father "failed to demonstrate a genuine effort to be a part of the children's lives."[5]  She argues the father's efforts to reestablish visitation were minimal—he did not appear for the hearing on the final protective order or the hearing one year later to extend the protective order, he did not file motions to reconsider or appeal the rulings declining to modify the protective order, and he

---

[5] At the termination hearing, the mother also argued that the father failed to provide financial support, the threshold requirement for "substantial and continuous or repeated contact."  *See* Iowa Code § 600A.8(3)(b); *In re K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015).  She conceded that the father was current on child-support payments but contended he had not made contributions to the children's medical bills.  The juvenile court attributed the "arrears in medical support" to a problem in communication between the parents "more so than evidence of abandonment."  The mother does not contest the father's economic contributions on appeal.

failed to respond when the mother offered visitation in March 2014 shortly after his first attempt at modifying the protective order. She asserts the father could have sent letters, gifts, or cards to the children through his attorney, but he failed to do so. Further, the mother contends the father's efforts through the court system cannot prevent a finding of abandonment because the express terms of section 600A.8(3)(b) require the father to communicate with either the children or the mother. According to the mother, the father could have satisfied the "regular communication" provision of section 600A.8(3)(b) by contacting the mother through her attorney but not by seeking relief through the court. Finally, the mother disputes the court's finding she prevented the father from contacting the children, emphasizing it was the father's own behavior that triggered the need for the protective order.

We agree the mother did not prevent contact with the children within the meaning of section 600A.8(3)(b) when she obtained a civil protective order against the father. *See In re K.M.*, No. 14-1374, 2015 WL 1849508, at *3 (Iowa Ct. App. Apr. 22, 2015) (noting father's own actions led to abandonment when his abusive conduct prompted the mother to seek no-contact orders). But finding the mother did not prevent contact does not end the analysis. Regardless of whether the mother prevented the contact, the father was physically unable to visit the children because of the protective order. *See* Iowa Code § 600A.8(3)(b)(1). And while the existence of a protective order is not "an ironclad defense" against an allegation of abandonment, the converse is also true—the existence of a protective order does not definitively prove abandonment. *See In re D.J.R.*, 454 N.W.2d 838, 842 (Iowa 1990).

Upon our de novo review, we agree with the district court's conclusion the mother has failed to establish abandonment. We read section 600A.8(3)(b), which requires regular communication with the children or their mother when the father is physically unable to visit, in conjunction with section 600A.2(19), which provides that the father has abandoned the children if he makes "only a marginal effort" to provide support or to communicate with the children. *See In re R.C.*, 523 N.W.2d 757, 760 (Iowa Ct. App. 1994). Given the existence of the protective order, the father's attempts to reestablish contact with the children, and the district court's persistent denial of a hearing on the issue of visitation, we cannot find the father abandoned his children. We disagree with the mother's characterization of the father's attempts at reestablishing visitation as marginal and find he took sufficient steps to prevent a finding of abandonment.[6] Although he did not attend the initial hearing on the civil protective order, the father sought to modify the protective order *four times* before the mother filed the petition to terminate his parental rights.

---

[6] The mother compares this matter to *In re W.W.*, in which the court found a mother subject to a Texas divorce decree—placing limitations on visitation with her children and prohibiting contact with the father—had abandoned her children after she failed to support her children financially, waited two years to obtain a modification of the decree, and failed to visit her children for nearly seven years. 826 N.W.2d 706, 708, 711 (Iowa Ct. App. 2012). The mother in *W.W.* contended that she had not abandoned her children because her husband "'prevented' her from visiting the children by invoking the Texas injunction and by contacting law enforcement authorities to essentially enforce its terms." *Id.* at 710. *W.W.* concluded that although the father "held [the mother] to the letter of the Texas injunction," he did not prevent the mother from visiting the children within the meaning of section 600A.8(3)(b). *See id.* at 711. The instant case is readily distinguishable from *W.W.* Here, the father consistently provided financial support for the children. The father was subject to a much more restrictive court order—preventing all contact with the children. And unlike the mother in *W.W.*, who "took no legally-sanctioned steps to mitigate the harsh effects of [the] injunction," *see id.*, the father made multiple attempts to re-establish contact with the children over a relatively short period of time. Further, he has not had the opportunity to be heard on the issue of visitation. These fundamental distinctions steer us to a different result than *W.W.*

Further, it was reasonable for the father to seek relief with the court that issued the protective order rather than the court that issued the decree of dissolution because the father was seeking to modify the protective order, not the dissolution decree.[7] Because the district court dismissed each of the father's requests without a hearing, the father did not have the opportunity to be heard on the issue of visitation. Parental rights are protected by the Due Process Clause of the Fourteenth Amendment. *See Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982). Finding the father abandoned his children without affording him a hearing on whether he should have visitation would deny him due process.

Finally, the mother contends she proved abandonment by showing the father rejected her March 2014 offer of visitation and failed to maintain regular communication with either the children, or the mother as their custodian, through the parents' attorneys as allowed by the protective order. First, the parties offered conflicting testimony about the mother's offer of visitation after obtaining the protective order. The father claimed he rejected the proposal because it reduced his visitation from that ordered in the dissolution decree. We give credence to the father's testimony in light of his repeated motions to modify the protective order in the months after the mother's proposal. Moreover, we find it reasonable for the father to seek a judicial resolution rather than pursuing negotiations through the parties' attorneys. Second, the record does not support

---

[7] We agree with the juvenile court's reasoning that the directive to the father to seek relief with the court that had issued his dissolution decree was improper because the father "was not asking to modify his decree but asking the district court . . . to consider visitation granted to him previously under the decree" in another county. "His position was not unreasonable, illogical and was in fact within the bounds of the procedure for the case involving the [protective] order established by the district court under the very terms of the protective order."

the mother's assertion the father should have known he could send letters or gifts to the children through legal counsel. While the protective order contained a provision allowing the father to communicate with the mother through counsel, it did not address communication with the children through counsel. We are not persuaded the father was required to send communications to the mother's attorney to prevent a finding of abandonment. Under the circumstances, the father attempted to meet the "regular communications" requirement under section 600A.8(3)(b) through his court filings, which were served on the mother through counsel. Moreover, it was only through court action that the father could have reestablished communication with the children.

On this record, we find the father made sufficient efforts to reestablish visitation with his children to preclude a finding of abandonment. *See In re K.M.*, 2015 WL 1849508, at *3 (requiring efforts to maintain contact with the child when no-contact order was in place); *In re A.K.*, No. 10-0164, 2010 WL 2598252, at *2 (Iowa Ct. App. June 30, 2010) (finding abandonment when protective order prevented contact with daughter and father did not take steps to reestablish contact, "even after a district court judge and one of his attorneys informed him of his options"). Because, like the juvenile court, we conclude the mother failed to prove the father abandoned the children, we do not consider whether termination is in the children's best interests. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). We affirm the court's order dismissing the mother's petition.

**AFFIRMED.**