# IN THE COURT OF APPEALS OF IOWA

No. 18-0287
Filed October 10, 2018

**IN THE INTEREST OF A.C.W.,**
**Minor Child,**

**M.W.,**
    Petitioner-Appellee,

**M.T.,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, DeDra L. Schroeder, Judge.

A biological father appeals the juvenile court decision terminating his parental rights in a private termination action. **AFFIRMED.**

Joseph G. Martin of Joseph G. Martin, PC, Cedar Falls, for appellant.

Sarah A. Reindl of Reindl Law Firm, PLC, Mason City, for appellee.

Mark A. Milder of Mark Milder Law Firm, Waverly, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A biological father, Melvin, appeals the juvenile court order extinguishing his parental relationship with five-year-old A.C.W. in this private termination action. Melvin disputes the court's finding he abandoned his son by failing to maintain contact or pay support. Melvin also argues termination was not in A.C.W.'s best interests. After reviewing the record anew, we reach the same conclusions as the juvenile court.[1] The facts support a finding of abandonment. Melvin only met A.C.W. once and provided no support beyond a single Christmas present. We also find ending Melvin's rights advances the child's welfare. For these reasons, we affirm the termination order.

## I.  Facts and Prior Proceedings

Our narrative begins in 2011 when Melvin had an intimate relationship with Alecia. At the same time, Alecia had an intimate relationship with Monte. So when Alecia learned she was pregnant, she was unsure which man was the father. In May 2011, Alecia informed Melvin of her liaison with Monte. In response, Melvin moved to Texas. After moving away, Melvin had minimal contact with and provided no financial support for A.C.W., despite knowing he might be the father.

Alecia continued her relationship with Monte and told him she believed he was the father. When A.C.W. was born in February 2012, Monte signed a voluntary recognition of parentage and his name appeared as the father on the

---

[1] We review private termination proceedings de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We defer to the factual findings of the juvenile court, particularly those relating to witness credibility, but those findings do not bind us. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). Our primary concern is the best interests of the child. Iowa Code § 600A.1 (2017); *G.A.*, 826 N.W.2d at 127.

birth certificate. But Alecia also notified Melvin when A.C.W. was born. Melvin asserts Alecia told him a DNA test confirmed Monte was the child's father. Alecia denies making that statement. Melvin took no action to verify paternity.

Alecia married Monte in March 2012, shortly after A.C.W.'s birth. One year later, they had a child a child in common, B.W. Alecia described the boys as "pretty tight," noting their proximity in age.

In 2016, Alecia and Monte's relationship unraveled. In April that year, Alecia contacted Melvin to tell him she believed he was A.C.W.'s biological father. Melvin alleges he delayed attempts to establish a relationship with A.C.W. or to extend financial support because Alecia told him to wait while she worked to improve her marriage to Monte. But the marriage was unsalvageable. In September, Monte petitioned to dissolve his marriage to Alecia. In her answer, Alecia admitted the parties had two minor children—A.C.W. and B.W. In an order on temporary matters, the district court placed the children in Monte's physical care.

DNA testing completed in April 2017 revealed Melvin was A.C.W.'s biological father. The next month, Melvin petitioned to establish paternity, custody, and support of the child. Two months later, Alecia petitioned to disestablish Monte as the legal father of the child. In response, Monte petitioned to terminate Melvin's parental rights, claiming Melvin had abandoned A.C.W. as that term is defined in Iowa Code section 600A.8(3).

By the time of the termination hearing in January 2018, Melvin had been in telephone contact with A.C.W. for about two and one-half months. He met the child one time. The court had ordered the parties not to tell A.C.W. Melvin was his

biological father, so they presented Melvin as a family friend. While Melvin gave A.C.W. a Christmas present, he provided no financial support.

The juvenile court determined Melvin abandoned the child under section 600A.8(3), reasoning:

> Despite having very good reason to believe that he may be the biological father of A.C.W., [Melvin] made no efforts to have any contact with A.C.W. whatsoever prior to November of 2017. [Melvin] did not even seek to intervene in these matters until May of 2017, over a year after he was affirmatively advised by Alecia in April of 2016 that she believed that he may be the father of A.C.W. [Melvin] has not been prevented by [Monte] or [Alecia] from having contact with A.C.W.; [Melvin] simply has not requested any contact until November of 2017. [Melvin] has not offered or paid any financial assistance whatsoever for the care and support of A.C.W.

The court granted the request to terminate Melvin's parental rights. The court also found termination was in A.C.W.'s best interests, noting Melvin's lack of involvement in the child's life and his willingness to step back and let Monte parent the child. Melvin now appeals the juvenile court's decision.

## II.   Abandonment

Melvin claims Monte did not offer sufficient proof of abandonment. Melvin blames his lack of contact with A.C.W. on Alecia's insistence he was not the father. He maintains he agreed to wait to connect with A.C.W. even after learning he might be the father because Alecia said she wanted to save her marriage to Monte. Melvin emphasizes he took steps to be involved in A.C.W.'s life after he received the DNA results in April 2017. Melvin excuses his lack of financial assistance for A.C.W. with the absence of any order to pay support. These protestations are not convincing.

Section 600A.8(3)(b) provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The legislature defines abandonment as a father or mother "reject[ing] the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child."  Iowa Code § 600A.2(19).

We find clear and convincing evidence in the record showing Melvin abandoned A.C.W.  Although he was aware Alecia might be pregnant with his child, he offered no financial support for her after he moved to Texas.  And when Alecia contacted him about the birth, he took no steps to confirm his paternity, to initiate any contact with the child, or to support the child financially.  The juvenile court believed Melvin suspected he might be the father "but yet did nothing to pursue the matter."

Even after Alecia told Melvin she believed he might be the father, he acceded to her request to delay establishing a relationship with the child. Melvin finally became involved in the child's life after receiving the DNA test results a year later. By the time of the termination hearing, he had only met the child once and provided no ongoing financial support.[2]

Melvin made "only a marginal effort to provide for the support of the child or to communicate with the child." *See* Iowa Code § 600A.2(19). Melvin's explanations for waiting to engage with A.C.W. do not excuse his absence from the child's life. "An abandoned child is no less abandoned because the parent can rationalize a reason for the abandonment." *In re M.M.S.*, 502 N.W.2d 4, 7 (Iowa 1993) (holding biological father "must be charged with some sense of involvement on the basis of his encounter with [the mother] and his knowledge of her pregnancy that followed, even notwithstanding rumors of another father"). The juvenile court properly determined Melvin abandoned A.C.W. under section 600A.8(3).

That statutory challenge decided, we turn to Melvin's claim the juvenile court violated his due process rights through its application of section 600A.8(3). Melvin notes the court had not yet decided his paternity action at the time of the termination hearing. He argues the court penalized him for failing to support a child with whom he had no legal interest. Melvin first raised this issue in a post-trial memorandum, and the juvenile court did not rule on it. But Melvin did not file

---

[2] On appeal, Melvin argues the juvenile court should have decided "the only reasonable amount of support to be paid by [him] was $0.00." At trial, Melvin did not testify he lacked the resources to pay support.

a post-trial motion requesting a ruling on the issue. Melvin therefore failed to preserve error. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

### III.     Best Interests

After successfully proving abandonment, Monte still must show termination of Melvin's rights was in A.C.W.'s best interests. *See In re W.W.*, 826 N.W.2d 706, 711 (Iowa Ct. App. 2012) (discussing best-interests requirement in section 600A.1).[3] Melvin insists the child's long-term best interests would be served by knowing his biological father.

Despite his insistence, Melvin did not "affirmatively assume the duties encompassed by the role of being a parent." *See* Iowa Code § 600A.1. He has not provided financial support, demonstrated a continued interest in A.C.W., nor maintained "a place of importance in the child's life." *See id.* As the juvenile court noted, Melvin was content for many years with permitting Monte to fill the role of A.C.W's father. Melvin "demonstrated a willingness to stay completely outside [the child's] life, and let others provide for all [his] care, and develop the association with [him] that he did not. This in time amounted to abandonment." *See M.M.S.,* 502 N.W.2d at 7.

When deciding if termination under chapter 600A is in the child's best interest, we also borrow the analytical framework described in Iowa Code

---

[3] Section 600A.1 provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

section 232.116(2). *See In re A.H.B.,* 791 N.W.2d 687, 690 (Iowa 2010). That framework emphasizes the child's safety and physical, mental, and emotional health. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (citing Iowa Code § 232.116(2)). Here, the evidence demonstrated remaining in Monte's care was in A.C.W.'s best interests. Monte has been a safe and stable parent for A.C.W. Staying with Monte also allows A.C.W. to interact with his half-brother B.W. Monte established by clear and convincing evidence that terminating Melvin's parental rights serves A.C.W.'s best interests.

We affirm the decision of the juvenile court.

**AFFIRMED.**