# IN THE COURT OF APPEALS OF IOWA

No. 18-0728
Filed December 5, 2018

**IN THE INTEREST OF M.M. and I.M.,**
**Minor Children,**

**C.J., Mother,**
    Petitioner-Appellee,

**G.M., Father,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Monroe County, William S. Owens, Associate Juvenile Judge.

A father appeals the termination of his parental rights to two sons under Iowa Code chapter 600A. **AFFIRMED.**

Robert F. Bozwell, Jr., Centerville, for appellant father.

Steven E. Goodlow, Albia, for appellee mother.

Kevin S. Maughan, Albia, guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A father, Gabriel, appeals the juvenile court order terminating his parental rights to two sons, twelve-year-old M.M. and nine-year-old I.M. He contests the finding he abandoned the children under Iowa Code section 600A.2(19) (2017). He also argues termination is not in the children's best interests. After reviewing the record anew, we reach the same conclusions as the juvenile court.[1] The mother, Crystal, offered clear and convincing evidence Gabriel, by his actions, rejected the duties imposed by a parent-child relationship. She also showed termination would help satisfy the children's need for consistency and stability. For these reasons, we affirm the termination order.

## I. Facts and Prior Proceedings

Gabriel and Crystal were married for almost six years, divorcing in 2008. They had two sons. M.M. was born in 2006. His brother, I.M., was born two years later. After the divorce, Crystal had physical care of the boys. The decree allowed Gabriel visitation and directed him to pay child support.

Gabriel lacked stability after the divorce. He moved quite a bit and often stayed with friends or relatives. And he did not hold steady employment—at one point going three years without a job. As a consequence, he exercised visitation and paid child support only sporadically. Gabriel admitted a history of

---

[1] We review private termination proceedings de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We defer to the factual findings of the juvenile court, particularly those relating to witness credibility, but those findings do not bind us. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). Our primary concern is the best interests of the child. Iowa Code § 600A.1; *G.A.*, 826 N.W.2d at 127.

methamphetamine and marijuana abuse. But he testified to being drug-free for 200 days at the time of the termination hearing.

Crystal remarried in 2012. She and her husband, Travis, care for M.M. and I.M., as well as three children they share. Travis testified he gets along "great" with I.M. and M.M. and wishes to adopt them.

For their part, the boys have experienced behavioral challenges. Crystal testified the family doctor diagnosed I.M. as having oppositional defiance disorder, attention deficit hyperactivity disorder (ADHD), disruptive mood dysregulation disorder, seizure disorder, and intellectual disabilities. For these conditions, the doctor prescribed four different medications to be taken daily. Crystal testified if I.M. does not stay on schedule with his prescriptions, his behavior "gets really bad" and he risks a higher chance of having a seizure. I.M. has been hospitalized twice for mental health issues. M.M. also takes daily medication for ADHD and anxiety.

Crystal expressed concern Gabriel did not properly administer the boys' medications when he had them for weekend visitations. After one visitation in particular, she believed their uncontrolled behavior signaled they had not received proper doses. When she asked Gabriel about it in a text message, she received this response: "I gave them enough medication so that they wouldn't have withdrawals." A testy phone call followed in which Gabriel and Travis exchanged threats. Gabriel testified Crystal did not include him in the decision to have the boys go on these prescription drugs. He admitted being "vocal" in his opposition but insisted he didn't stop their medications.

Crystal was also concerned about Gabriel's continued abuse of methamphetamine. His visitations with the boys continued through 2013, but they

stayed mostly with their grandmother. In Crystal's words: "Dad has always come and gone. He'd go on one of his benders with the methamphetamine and disappear." In discussing future visitations, Crystal told Gabriel over the phone: "Get your act cleaned up and we'll talk." Gabriel then stopped communicating with Crystal, despite knowing her phone number and where she lived with their sons.

After May 2013, Crystal turned down the grandmother's repeated requests to continue the visits because the grandmother "did not think the boys should be on medication." Because of the grandmother's attitude, Crystal worried she would not give them their prescribed doses.

In June 2017, Crystal petitioned to terminate Gabriel's parental rights. By that time, Gabriel had not seen his sons for more than three years.[2] He also had not sent cards or gifts since 2013. And he owed $13,000 in back child support. After a contested hearing, the juvenile court granted the petition terminating Gabriel's parental rights. He now appeals.

## II. Analysis

### A. Abandonment

Gabriel argues Crystal did not offer sufficient proof he abandoned M.M. and I.M. He contends he "has tried to maintain a relationship with his boys to the best of his ability" in light of the circumstances and has provided financial support within his means. He admits being behind in child support but highlights a recent $60 payment and the likelihood he will be starting back to work soon. He chronicles his efforts at reinitiating contact: (1) a letter to Crystal filed with the clerk of court in

---

[2] As the juvenile court notes, the record is unclear whether the last visitation was in May 2013 or 2014.

June 2014; (2) initiation of a contempt action for denial of visitation in March 2016, which he never filed; (3) a request for legal aid, but denial of assistance; and (4) calls to private attorneys but an inability to afford a retainer. Crystal denies these steps amount to "substantial efforts to resume visits with the children."

To resolve their disagreement, we turn to the language of the statute. Section 600A.8(3)(b) provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>        (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>        (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>        (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The legislature defined abandonment as a father or mother "reject[ing] the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(19).

Like the juvenile court, we find clear and convincing evidence in the record Gabriel did not contribute a reasonable amount to the support of the children. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012). He was more than $13,000

in arrears on a child-support obligation imposed in 2008. In 2016 and 2017 he paid a total of $271.79. Although Gabriel was often unemployed, the juvenile court linked his reduced means to his decision to use illegal drugs. The court also noted that even during Gabriel's recent 200 days of sobriety, he only paid $210 in child support. He also provided no gifts, cards, or other support for the boys.

Beyond the lack of financial support, Gabriel did not communicate with the children. The record shows Crystal limited visitation while Gabriel was actively using methamphetamine. But Gabriel did not take meaningful steps to renew the father-son relationship once he was sober. Under these circumstances, we cannot conclude Crystal "prevented" Gabriel from visiting or communicating with the children. *See id.* at 711. His failure to engage with the boys in the ways listed in section 600A.8(3)(b) supports a finding of abandonment.

## B. Best Interests

We must next decide whether termination of Gabriel's parental rights was in the children's best interests.[3] *See id.* When deciding if termination under chapter 600A is in the child's best interest, we may borrow the analytical framework described in Iowa Code section 232.116(2). *See In re A.H.B.,* 791 N.W.2d 687, 690 (Iowa 2010). That framework emphasizes the child's safety and physical,

---

[3] Iowa Code section 600A.1 addresses the factors in the best-interests analysis:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

mental, and emotional health. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (citing Iowa Code § 232.116(2)).

Gabriel touts his recent progress in substance-abuse treatment. And he points to extended family—his mother and grandmother—who are available to support his parenting efforts. He seeks a chance to resume an active role in the boys' lives.

Crystal believes Gabriel would be a destabilizing influence on M.M. and I.M. And because of their behavioral issues, they have a heightened need for consistency and stability. She contends adoption by Travis would provide them a more permanent and nurturing environment.

Clear and convincing evidence supports Crystal's position that termination would be in the children's best interests. Gabriel has not affirmatively assumed the duties of parenting. He has made little effort to be a part of the boys' lives. Their mental and emotional health would be best protected by preserving their current situation. As the juvenile court aptly concluded: "To attempt to reintroduce Gabriel to them after he has, by his own actions, absented himself from their lives may well threaten the consistency and stability they enjoy in the home with their mother and stepfather.

**AFFIRMED.**