**IN THE COURT OF APPEALS OF IOWA**

No. 18-2019
Filed August 21, 2019

**IN THE INTEREST OF D.K.,**
**Minor Child,**

**K.E., Mother,**
    Petitioner-Appellee,

**B.S., Father,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, William

Owens, Associate Juvenile Judge.


A father appeals the termination of his parental rights to his minor child.

**AFFIRMED.**


Monte McCoy of McCoy Legal Services, Centerville, for appellant father.

Alan M. Wilson of Miles Law Firm, Corydon, for appellee mother.

Jonathan Willier, Centerville, guardian ad litem for minor child.


Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

A father appeals the termination of his parental rights to his child, D.K., who was four years old at the time of the termination hearing. The district court terminated the father's parental rights under Iowa Code section 600A.8(3)(b) (2018). On appeal, the father argues the termination of his parental rights is supported by insufficient evidence.

## I. Background Facts and Proceedings

The mother and father were eighteen and seventeen years old respectively when D.K. was born. D.K., the parents, and some members of the mother and father's families all lived together in Galva, Illinois. In March or April 2015, the mother and her family decided to leave Galva with D.K. and move to Centerpoint, Iowa, where the mother's family had lived in the past. The father did not want the mother to take D.K., and either he or his family contacted law enforcement to prevent the mother from moving D.K. to Iowa. The father was informed that, because he was a minor, the mother was D.K.'s "legal custodian" and could move D.K. to Iowa without his permission.

On April 15, 2015, the mother applied for relief from domestic abuse. On May 11, 2015, the district court entered a protective order granting the mother temporary legal custody of D.K. subject to the father's right to arrange visitation with D.K. at the home of R.E., D.K.'s maternal grandmother. The parents agreed to arrange times for the father to visit D.K. by contacting R.E. through social media. The protective order did not specify how the father was supposed to contact R.E. The district court renewed the protective order for another year on

May 26, 2016, and the renewed order adopted the same custody and visitation provisions.

The father only visited D.K. once between April 2015 and the November 2018 termination hearing. The visit occurred on Easter 2016 and lasted for one hour. The father and his family asked R.E. about arranging two other visits, but R.E.'s health did not permit either visit to take place. The mother and R.E. offered to pay for the father's train ticket to visit D.K., but the father declined. The father had no other contact with D.K. throughout the termination proceedings.

Once the renewed protection order expired on May 16, 2017, R.E. either blocked or unfriended the father on social media. While the parties dispute whether R.E. blocked or unfriended the father, undisputed testimony suggests the father would be able to message R.E. if she unfriended him, but would not be able to message R.E. if she blocked him. The parties also dispute whether the father could contact the mother or R.E. through other means. The father had gone to R.E.'s house for the Easter 2016 visit, although he testified that he had forgotten where she lived. He also knew R.E.'s phone number, although at the termination hearing he testified she had blocked his phone number and his mother's phone number. Both the mother and R.E. testified the father never tried to contact them after the renewed protection order expired.

The mother filed the petition to terminate parental rights, and a hearing took place in August 2018. The mother testified the father had only sent her $600 in child support, and had not sent D.K. any presents or cards for D.K.'s birthday or for any holidays. The father admitted he made no other arrangements to visit D.K. besides the Easter 2016 visit. The district court

determined the father had abandoned D.K. under Iowa Code section 600A.8(3)(b) and granted the mother's petition to terminate the father's parental rights. The father appeals.

## II.      Standard of Review

We review termination of parental rights proceedings under Iowa Code chapter 600A de novo. *In re Q.G.*, 911 N.W.2d 761, 769 (Iowa 2018). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 491 (Iowa 2000).

## III.     Discussion

The district court terminated the father's parental rights under Iowa Code section 600A.8(3)(b). The father argues the mother did not meet her burden to prove that he had abandoned D.K. under chapter 600A by clear and convincing evidence. "The grounds for termination of a parent's rights must be established by clear and convincing evidence." *In re T.S.*, No. 18-1333, 2019 WL 325042, at *1 (Iowa Ct. App. Jan. 23, 2019) (quoting *In re C.A.V.*, 787 N.W.2d 96, 100 (Iowa Ct. App. 2010)). We conclude the mother has proven the father abandoned D.K. by clear and convincing evidence.

### A.  Abandonment under Iowa Code section 600A.8(3)(b)

The first step in the analysis is to determine whether the mother has shown grounds for terminating the father's parental rights to D.K. exist. Chapter 600A defines "[t]o abandon a minor child" as when a parent "rejects the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal

effort to provide for the support of the child or to communicate with the child."

Iowa Code § 600A.2(20).  Under section 600A.8(3)(b),

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>     (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>     (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>     . . . .

"[T]he threshold element of 'substantial and continuous or repeated contact' is economic contributions."  *In re S.A.*, No. 17-0859, 2018 WL 1182889, at *2 (Iowa Ct. App. Mar. 7, 2018) (quoting *In re. K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015)).  The district court determined the father had not provided adequate financial support to D.K. within his means.  On appeal, the father highlights the district court's determination that the mother provided insufficient evidence to terminate his parental rights under Iowa Code section 600A.8(4).  But reasonable support "is not limited to court-ordered support."  *In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012).  Other evidence supports the district court's conclusion that the father has not provided reasonable support within his means, despite the child-support payments.  The father was employed building trailers for about a year.  Prior to that, he was employed either building trailers or as a general laborer at two farms.  Apart from child-support payments, he has provided no financial support to D.K. at all over that period.  He did not send D.K. any gifts or holiday presents.  He did not give

the mother any money for D.K.'s medical costs, clothing, food, or other expenses.

Other evidence supports the determination that the father abandoned D.K. by failing to make consistent monthly visits or maintain contact with D.K. or the mother. The father admits he only visited D.K. once since they moved to Iowa in April 2015, and that visit lasted only one hour. He further admits R.E. once offered to pay for his train ticket to visit D.K., which he declined. Testimony by R.E. also showed that she made other attempts to arrange visits, which the father also declined.

The father argues he did not abandon D.K. because the mother and R.E. prevented him from having contact with him. He maintains the mother and R.E. prevented him from contacting them through social media, and R.E. blocked his phone number. The district court heard this testimony and concluded the mother and R.E.'s testimony was more credible. Additionally, "[t]he subjective intent of the parent . . . unsupported by evidence of acts specified in paragraph . . . 'b' manifesting such intent, does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c). That same provision also notes neither the mother nor R.E. had to encourage the father to visit D.K. *Id.* ("In making a determination, the court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraph . . . 'b'."). We conclude the mother proved the father abandoned D.K. under Iowa Code section 600A.8(3)(b) by clear and convincing evidence.

## B. Best Interest Analysis

Once a ground for termination has been established, "the petitioner next must show by clear and convincing evidence termination of parental rights is in the best interest of the child." *Q.G.*, 911 N.W.2d at 770. The best interest analysis "requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2). Affirmative assumption of parental duties includes "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.* The best interest analysis is not "a formulaic or rule-bound approach," and "[e]ach case must be decided on its own facts." *Q.G.*, 911 N.W.2d at 771.

In this case, several factors point toward termination as in the best interests of D.K. First, there is no close relationship between the father and D.K., who has only seen the father once since moving to Iowa. The father has not made a genuine effort to maintain contact with D.K., despite knowing how to contact R.E. and R.E.'s efforts to set up visits between the father and D.K. while the protective orders were in effect. An additional factor in the interest of D.K.'s stability is his relationship with the mother's fiancé. *See id.* ("Another factor to consider is the fact that a stepfather is willing to provide for the children's needs and is willing to adopt the children."); *see also In re T.K.*, No. 16-0029, 2016 WL 4384869, at *3 (Iowa Ct. App. Aug. 17, 2016) (considering the "large role" played by a mother's husband in the best interest analysis). The mother and R.E. both testified that D.K. considers the fiancé to be his father, and the mother further

testified the fiancé would be willing to adopt D.K. if the father's parental rights are terminated.

Considering the evidence together, the father has not "affirmatively assumed the duties encompassed by" being D.K.'s father and has not maintained a place of importance in D.K.'s life. Iowa Code § 600A.1(2). We conclude termination is in D.K.'s best interest.

**AFFIRMED.**