In the Interest of W.W., J.W., and E.W., Minor Children,

S.W., Father, Appellant.

No. 12–0336.

Court of Appeals of Iowa.

Dec. 12, 2012.

Eric Borseth of Borseth Law Office, Altoona, for appellant father.

Jacob Mason, Ankeny, for appellee mother.

Cathleen J. Siebrecht of Siebrecht Law Office, Des Moines, attorney and guardian ad litem for minor children.

Heard by EISENHAUER, C.J., and VOGEL and VAITHESWARAN, JJ.

VAITHESWARAN, J.

Scott Whisler appeals a district court order dismissing his petition to terminate his ex-wife's parental rights.

## I. Background Facts and Proceedings

Scott and Dena Whisler married and had three children. They lived in Texas for several years and, in 2005, obtained a divorce decree from a Texas court. The court designated Scott the "sole managing conservator" of the children and Dena the "possessory conservator." The court required supervision of Dena's visits with the children, reasoning as follows:

> The Court finds that credible evidence has been presented that Dena Darlene Whisler has a history or pattern of child neglect directed against the children.... It is therefore ordered that visitation shall be under the supervision of a visitation supervising service chosen by Scott Allen Whisler. Dena Darlene Whisler shall be responsible for contacting the supervising service and shall pay all costs of such service. Dena Darlene Whisler is further ordered to take random drug tests at Scott Allen Whisler's request. Dena Darlene Whisler shall be responsible for the payment of such drug testing. Once she has tested clean on 3 tests in a row she will only pay for drug tests she fails, and Scott Allen Whisler shall pay for all others.

Finally, the court permanently enjoined Dena and "her agents, servants, employees, and attorneys" from "[c]ommunicating in person, by telephone, or in writing with Scott" and required any contact with him to take place through "a designated intermediary such as Iowa Child Protective Services."

Meanwhile, Scott moved to Iowa, as did Dena. Dena did not visit the children for six months preceding the entry of the 2005 Texas decree or at any time thereafter.

In 2007, Dena obtained an order modifying the Texas divorce decree to designate three Iowa organizations as visitation supervisors. The modification order required the parents to "cooperate with the scheduling of the supervised access and making the children available for same." Scott provided the three organizations with his contact information but was never approached by them to facilitate visits.

More years elapsed with no contact between Dena and her children. In 2011, Scott filed a petition to terminate her parental rights, alleging in part that Dena abandoned the children. *See* Iowa Code § 600A.8(3) (2011). The district court found Dena to be indigent and appointed her an attorney. Following trial, the district court rejected the allegation of abandonment and dismissed Scott's petition. Pursuant to statute, the court ordered Scott to pay Dena's trial attorney fees. The court also ordered the parents and guardian ad litem to submit a parenting plan to facilitate visitation.

Scott moved to amend the district court's findings and conclusions. He asserted in part that the court had no authority to impose a parenting plan. The district court agreed and struck that portion of its order. The court later ordered Scott to pay Dena's trial attorney fees. Scott appeals.

## II. Timeliness of Appeal

Scott did not file his notice of appeal within thirty days of the district court's original order dismissing his termination petition, but he did file it within thirty days of the court's ruling on his motion to reconsider. *See* Iowa R.App. P. 6.101(1)(b) (requiring notice of appeal to be filed within thirty days from the time that the order, judgment, or decree is entered but stating rule 1.904(2) motion for enlarged findings and conclusions delays deadline to file notice of appeal until thirty days after the entry of a ruling on that motion). Dena asserts that Scott could not avail himself of

this delayed time frame because, in her view, the motion to reconsider was not a true 1.904(2) motion for enlarged findings and conclusions. *See Meier v. Senecaut,* 641 N.W.2d 532, 538 (Iowa 2002) (stating Rule 1.904(2) motion is only available to address a ruling made on a trial of an issue of fact without a jury).

■ To the contrary, Scott's motion addressed the court's ruling on an issue of fact: visitation between Dena and her children. The parenting plan ordered by the court flowed directly from the court's fact finding that Scott, as sole custodian of the children, took advantage of circumstances making it "difficult if not impossible" for Dena to exercise visitation. Scott's motion pointed out the court's inconsistency in assuming continuing jurisdiction over visitation while at the same time dismissing the petition that brought the visitation question to the court's attention. We conclude Scott's motion was an appropriate Rule 1.904(2) motion raising a previously undecided legal issue grounded on a question of fact. *See Explore Info. Servs. v. Court Info. Sys.,* 636 N.W.2d 50, 57 (Iowa 2001) (stating that a rule 1.904(2) motion cannot be used simply to rehash legal issues already previously decided by the court). Under these circumstances, we conclude the time for filing a notice of appeal began to run only after the court ruled on the motion to reconsider and, accordingly, the notice of appeal was timely. *See Woody v. Machin,* 380 N.W.2d 727, 729 (Iowa 1986) (stating motion to reconsider orders on costs and abatement was in substance a motion under rule 1.904(2) and it "extended the time for appeal").

### III. Refusal to Terminate—Abandonment

■ Scott contends the court should have terminated Dena's parental rights to their three children pursuant to two statutory grounds for termination. *See* Iowa Code § 600A.8(2) ("A parent has petitioned for the parent's termination of parental rights pursuant to section 600A.5."),[1] (3) ("The parent has abandoned the child."). On our de novo review, we find clear and convincing evidence to support abandonment. *See In re C.A.V.,* 787 N.W.2d 96, 100 (Iowa Ct.App.2010) (setting forth the standard of review).

> "To abandon a minor child"
>
> means that a parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(19).[2] A parent is deemed to have abandoned a child who is six months or older

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a

---

1. Section 600A.5 lists persons who may petition for termination of parental rights, the appropriate venue for a petition to be filed, and required contents of a petition.

2. Prior to a legislative amendment in 1997, the definition read as follows:

   "To abandon a minor child" means to permanently relinquish or surrender, without reference to any particular person, the

parental rights, duties, or privileges inherent in the parent-child relationship. The term *includes both the intention to abandon* and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.

Iowa Code § 600A.2(18) (1995) (emphasis added).

reasonable amount, according to the parent's means, and as demonstrated by any of the following:

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b). Another provision clarifies that "[t]he subjective intent of the parent ... unsupported by evidence of acts specified in paragraph 'a' or 'b' manifesting such intent, does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

Dena concedes she "has not seen the children in interest in nearly seven years, has provided no financial support to the children during that time, and has not communicated directly with the children in any manner during that time." She also concedes that in most cases these facts would satisfy the statutory ground for abandonment. This case is different, she asserts, because Scott "prevented" her from visiting the children by invoking the

Texas injunction and by contacting law enforcement authorities to essentially enforce its terms. *See id.* § 600A.8(3)(b)(2).

The problem with Dena's argument is that it overlooks the predicate language of section 600A.8(3)(b), which states that a parent is deemed to have abandoned a child "unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount." As mentioned, Dena concedes she provided no monetary support for the children. While she points out that the Texas dissolution decree did not obligate her to pay child support, section 600A.8(3)(b) is not limited to court-ordered support payments; those types of payments are the subject of a separate provision. *See id.* § 600A.8(4) ("A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause.").

Dena's only remaining justification for declining to support her children financially is based on the Texas court's broad injunction precluding contact with Scott. She maintains the court effectively prevented her from remitting payments to Scott by prohibiting her as well as "her agents, servants, employees, and attorneys" from "[c]ommunicating" with him or his "associates, employers or clients" "in person, by telephone, or in writing." This language, while far-reaching, did not prevent Dena from having her attorneys send payments to Scott's attorney, at least during periods when she acknowledged having the financial wherewithal to do so.[3] In

---

**3.** With respect to Dena's resources, the district court found as follows:

> Over the years, Dena had several different sources of income, including employment with Anderson Erickson Dairy, Hartley & Associates, as well as financial

support from her former landlord, her family, her boyfriend Daniel Dockham and his parents. In 2011 alone, Dena received over $20,000 in support from Dockham's parents. Dena fraudulently collected over $20,000 in government aid

sum, Dena had a parental obligation to support her children financially, whether or not the district court ordered it. As she did not, the children were deemed abandoned.

■ Even if Dena's failure to support financially the children does not end the matter, we are persuaded that her failure to engage the children in other ways supports a finding of abandonment. Dena waited two years to obtain a modification of the visitation portion of the decree. After it became clear that two of the three visitation supervisors designated by the Texas court had no authority to act as private supervisors, she did not seek redress. And, after she determined that the third visitation supervisor was too expensive, she again did not pursue other options.

Dena only asserted that Scott was systematically using the courts and law enforcement authorities to thwart her visitation efforts after he filed his termination petition in 2011. By this time, she had not seen the children since January 2005, and their memories of her had either faded or calcified. While there is no question Scott held Dena to the letter of the Texas injunction, Dena took no legally-sanctioned steps to mitigate the harsh effects of that injunction. Under these circumstances,

on behalf of the children even though they did not reside with her. None of those funds, however, were used by Dena to visit or support her children. In addition, during one of Dena's calls to Scott, she left a message stating that she was working and was more than able to provide financial assistance for the children. Nevertheless, Dena has never done so. Finally, Dena's witnesses testified that all she needed to do was ask and they would have loaned her the money to pay for supervised visits.
These findings are supported by the record.

we cannot conclude Scott "prevented" her from visiting the children.

### IV. Best Interests

We must next determine whether termination of Dena's parental rights was in the children's best interests. *In re J.L.W.*, 523 N.W.2d 622, 625 (Iowa Ct.App.1994).[4]

■ In addition to the factors cited above, the oldest child's emotional reaction to his mother militated in favor of termination. His psychologist testified that the child felt anger toward her for past actions and threatened to do her bodily harm. As for the younger two children, they by turns expressed fear, curiosity, or disinterest, but not attachment. This is not surprising, as they were just five years old when the dissolution decree was entered and lived exclusively with their father after that date. For these reasons, we agree with the children's guardian ad litem that "it is in the best interest of the children that the Mother's rights be terminated." We reverse and remand for entry of an order terminating Dena's parental rights to the three children in Scott's custody.

### V. Attorney Fees

Scott contends the district court erred in ordering him to pay Dena's trial attorney fees pursuant to Iowa Code section 600A.6B. He specifically argues the statute

4. Iowa Code section 600A.1 addresses the factors in the best interests analysis:
The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

(1) "require[s] a review of any fee application by the State Public Defender" and precludes a direct award by the trial court and (2) "[t]he fee shifting component" of the chapter "violates [his] . . . constitutional rights to equal protection."

Section 600A.6B states:

1. A person filing a petition for termination of parental rights under this chapter or the person on whose behalf the petition is filed shall be responsible for the payment of reasonable attorney fees for counsel appointed pursuant to section 600A.6A unless the person filing the petition is a private child-placing agency as defined in section 238.1 or unless the court determines that the person filing the petition or the person on whose behalf the petition is filed is indigent.

2. If the person filing the petition is a private child-placing agency as defined in section 238.1 or if the person filing the petition or the person on whose behalf the petition is filed is indigent, the appointed attorney shall be paid reasonable attorney fees as determined by the state public defender.

3. The state public defender shall review all the claims submitted under this section and shall have the same authority with regard to the payment of these claims as the state public defender has with regard to claims submitted under chapters 13B and 815, including the authority to adopt rules concerning the review and payment of claims submitted.

■ Scott's first argument is based on paragraph 2, which authorizes the state public defender to determine the reasonable amount of attorney fees "[i]f the person filing the petition is a private child-placing agency . . . or if the person filing the petition or the person on whose behalf the petition is filed is indigent." Scott, as a non-indigent private individual, does not fall into either of these categories. Accordingly, the state public defender was not required to approve the claim.[5]

■ Scott's second argument, based on the equal protection clauses of the federal and state constitutions, is premised on his belief that the required payment of the opposing party's fees is "a tax on [his] access to the courts that is not equally applied." He asserts, "to the extent that only *non-indigent* petitioners seeking termination of parental rights of indigent respondents are burdened with the additional expense of satisfying the state's duty to provide counsel, 600A.613 represents a fa-

---

5. Section 600A.6B(3) provides, "The state public defender shall review all the claims submitted under this section. . . ." An argument could be made that this provision requires the state public defender to review claims involving a non-indigent filer in addition to claims involving an indigent filer or a child-placement agency. If this language were read that broadly, however, subsection 2, limiting the claims subject to review by the public defender, would be meaningless. For that reason, we read section 600A.6B(3) to mean that the state public defender shall review all the claims *required by subsection 2* to be submitted for review. Petitions filed by non-indigent persons are subject to review by the district court rather than the state public defender. The court is required to review the reasonableness of the attorney fee claim. *See* Iowa Code § 600A.6B(1) (referring to "reasonable attorney fees"). In this case, the district court engaged in a reasonableness review, reaffirming an earlier ex parte order that Dena's attorney was not subject to "an arbitrary $600 fee cap" imposed by the state public defender in cases subject to review by that agency. The court nonetheless discounted the attorney's time by twenty-five percent. At the outset, the court also determined Dena's right to counsel pursuant to Iowa Code section 600A.6A (setting forth several prerequisites to the appointment of counsel, including that "[t]he person has a colorable defense to the termination of parental rights").

cially uneven financial burden on a specific subset of persons seeking the benefits of Chapter 600A." Scott also argues "the provision of legal counsel for indigent parents in 600A termination cases is the constitutional duty of the state." *See In re S.A.J.B.*, 679 N.W.2d 645, 650 (Iowa 2004) (finding "no narrowly tailored compelling state interest to deny counsel *at public expense* to indigent parents facing an involuntary termination of their parental rights under Iowa Code chapter 600A") (emphasis added). He continues, "to the extent that only non-indigent petitioners seeking termination of parental rights of indigent respondents are burdened with the additional expense of satisfying the state's duty to provide counsel, 600A.613 represents a facially uneven financial burden on a specific subset of persons seeking the benefits of Chapter 600A."

The district court declined to address these issues after concluding that Scott did not raise them on a timely basis. Because the constitutional issues were not decided, error was not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

■ Section 600A.613 does not violate the equal protection clauses of the federal and state constitutions in the manner articulated by Scott and the district court did not err in applying that section.

## VI. Appellate Attorney Fees

■ Dena requests appellate attorney fees. Section 600A.613 does not limit a petitioner's obligation to the payment of trial attorney fees. *See Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (allowing recovery of appellate attorney fees under section 572.32 because that provision in the mechanic's lien statute "in no way limits attorney fees to those incurred in the district court"). The statute also does not require the indigent party to have prevailed as a prerequisite to shifting the payment of fees to the non-indigent private person who filed the petition. *Cf. id.* (noting section 572.32 refers to "successful" plaintiff); see Iowa Code § 572.32 (referring to "prevailing party"). Given the breadth of the fee-shifting provisions of the statute and the virtual absence of limiting language, we conclude Scott is responsible for payment of Dena's appellate attorney fees. We remand for a determination of those fees.[6]

**REVERSED AND REMANDED.**

---

**6.** Dena also requests post-trial attorney fees of $1080. We remand for a determination of Dena's entitlement to post-trial attorney fees.