**IN THE COURT OF APPEALS OF IOWA**

No. 16-0066
Filed December 21, 2016

**IN THE INTEREST OF E.S. and R.S.,**
**Minor children,**

**H.S., Mother,**
        Respondent-Appellant,

**C.S., Father,**
**M.Z.,**
        Petitioners-Appellees.
_____

        Appeal from the Iowa District Court for Linn County, Jane F. Spande,

District Associate Judge.

        A mother appeals from the termination of her parental rights.  **REVERSED**

**AND REMANDED.**

        Scott A. Shoemaker of Shoemaker Law Office, Cedar Rapids, for

appellant mother.

        Frank J. Nidey of Nidey Erdahl Tindal & Fisher, PLC, Cedar Rapids, for

appellees.

        Kara L. Bullerman of Allen, Vernon, & Hoskins, Cedar Rapids, attorney

and guardian ad litem for minor children.

        Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

This is an appeal from an order terminating Heather's parental rights in her children, E.S. and R.S. The termination action was filed by the children's father, Clayton, and the father's fiancée, Maggie. The district court terminated the mother's parental rights pursuant to Iowa Code section 600A.8(3)(b) (2015).

By way of background, Clayton and Heather were divorced on December 2, 2009, after a marriage of approximately two-and-a-half years. Clayton was awarded physical care of E.S. and R.S. with Heather awarded visitation. The decree did not require Heather to pay child support in contemplation of the transportation expenses she would incur for visitation—at the time, she lived in Indiana and he lived in Iowa. In 2012, the parties entered into a stipulated modification. Heather had returned to Iowa. The parties agreed Heather should have visitation with the children every other weekend. The modification decree also established Heather's child support obligation at $600 per month.

On June 15, 2015, Clayton and Maggie filed their petition to terminate Heather's parental rights. They alleged Heather abandoned the children, as defined by Iowa Code section 600A.8(3)(b). That section provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b). The district court found the petitioners had proved abandonment and terminated Heather's parental rights in her children.

Our review of termination-of-parental-rights proceedings is de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). In termination proceedings, the best interests of the children involved are "the paramount consideration," but we also give "due consideration" to the interests of the children's parents. *See* Iowa Code § 600A.1. The petitioners must prove their case by clear and convincing evidence. *See* Iowa Code § 600A.8. Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. *See In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). It is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. *See id.* This significant burden is imposed to minimize the risk of an erroneous deprivation of a parent's fundamental liberty interest in raising her children. *See Santosky v. Kramer*, 44 U.S. 745, 759 (1982). We therefore cannot rubber stamp what has come before; it is our task to ensure the petitioning parties have come forth with the quantum and quality of evidence necessary to prove each of the elements of their case. *See id.* at 769 ("We hold that such a standard [requiring clear and convincing evidence] adequately conveys to the factfinder the level of subjective certainty about [the] factual conclusions necessary to satisfy due process.").

The parties' testimony regarding the relevant facts differs greatly—to the point of being irreconcilable. Clayton and Maggie testified Heather has had only sporadic contact with the children. Clayton produced a journal documenting Heather's visits and communication with the children. Clayton and Maggie also produced phone records showing only a few calls from Heather's phone to their phone. Clayton's records show Heather's contact fell beneath the statutory minimum. Moreover, Clayton and Maggie claim what contact Heather did have with the children was traumatic. She would call to cancel visits at the last minute. She showed up to their school and extracurricular activities unexpectedly and agitated them. Clayton and Maggie believe Heather has abandoned the children and termination is in the children's best interests.

Heather claims she has had frequent contact with the children. Heather, too, kept records of visits. Heather's records show more frequent contact than Clayton's records. She also produced photographs evidencing visits, including visits not documented in Clayton's journal. In addition to in-person communication, Heather testified she spoke to the children more frequently than the phone records indicate. Heather contacted the children from friends' phones. She also spoke with them online through a former paramour's video-gaming system. Heather contends she attended several parent-teacher conferences and remained in contact with the children's teachers by email.

To the extent she did not exercise visitation as often as the modification decree provides, Heather contends the petitioners prevented more visitation and communication. She testified Maggie blocked her phone number and Clayton and Maggie turned off their answering machine at night to limit her contact. She

argues Clayton prevented additional visitation because of his concern regarding her mental health. Finally, Heather contends Clayton moved without providing her his new home address and she was unable to contact the children until she learned of the address when served with notice of this proceeding. Clayton and Maggie vehemently deny this fact, testifying Heather had actual knowledge of their new address because Heather showed up at the new house several days after Clayton and Maggie moved in.

To some extent, Heather's contention the petitioners prevented visitation is evidenced by a "contract" between the parties. The June 2014 "contract" sets forth Clayton's expectations for visitation. The penalties for failure to comply with Clayton's expectations were draconian: "If you are more than ten minutes late, your visit is canceled." "No cancelations or visits are done." "If any of these issues occur your visits will be canceled for six months. Then we will try again. If it occurs again you will not have your visits." Clayton testified he wanted these conditions to protect the children, who would become upset if and when Heather cancelled visitation. Despite his expressed good intentions, the contract does support Heather's contention Clayton was limiting visitation.

Clayton and Heather's respective accounts of what actually occurred are each suspect. Although purportedly made contemporaneously with visitations, the parties' respective journals do not appear to be accurate. Clayton's journal fails to document certain visitations known to have occurred because Heather had photographs of the same. Heather's records sometimes fail to note a visitation where Clayton's journal documents visitation. The telephone records Clayton and Maggie produced omit phone calls both parties recorded elsewhere.

The phone records also do not document any contact made over the internet through the children's gaming system. The parties' respective ability to recall events independent of the journals is also suspect. After Clayton and Heather divorced, Clayton suffered a significant brain injury, which he concedes impairs his memory. In turn, after the parties' dissolution, Heather suffered from major depressive order, which may have interfered with her ability to accurately record or recollect events.

Having surveyed the record, we directly consider whether the petitioners proved their case by clear and convincing evidence. "[T]he threshold element of 'substantial and continuous or repeated contact' is economic contributions." *In re K.W.,* No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015); *see also In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (discussing "predicate language of section 600A.8(3)(b)"). Support of the child in a reasonable amount is not limited to court-ordered support. *See W.W.*, 826 N.W.2d at 710 (noting a parent's failure to make court-ordered payments is the subject of section 600A.8(4)).

For a fairly long period of time after Clayton and Heather divorced, Heather provided little, if any, financial support for the children. Until the time of the modification decree in 2012, Heather was not required to pay child support because it was contemplated Heather would have travel expenses to visit the children. Heather failed to make child support payments in 2012 and 2013; however, the record reflects Heather did not have the means to provide support for the children. *See* Iowa Code 600A.8(3)(b). Heather was not effectively treating her mental-health condition and lacked stable employment. Once she

commenced treatment and obtained steady employment, she commenced financial support of the children. Since 2014, Heather has paid $20,232.50 in child support, keeping current on her current obligation and making up a significant portion of her arrearage. Under the circumstances, we conclude Heather has provided financial support in a reasonable amount.

The petitioners must also prove Heather has not maintained substantial contact with the children. As discussed above, Heather's calendars, photographs, and testimony show she maintained contact with the children. To the extent she failed to exercise visitation, she was unable to do so because of her ongoing mental-health conditions and financial instability. *See In re Winstoniya D.*, 997 N.Y.S.2d 716, 717–718 (N.Y. App. Div. 2014) (considering mother's struggles with substance-abuse and mental-health treatment in determining whether she was "physically and financially able" to care for children). There is also evidence to suggest Clayton and Maggie interfered with Heather's ability to contact the children, including limiting her ability to contact them by telephone and bargaining for a contract that sought to limit her contact with them. Indeed, Clayton testified he unilaterally disallowed contact between Heather and the children once he filed his petition to terminate her rights. While Clayton may have been motivated by good intentions toward the children, he cannot unilaterally cancel the mother's visitation with the children. *See In re A.E.*, No. 01-1099, 2002 WL 663758, at *1 (Iowa Ct. App. Apr. 24, 2002) (affirming denial of termination petition where custodial parent had prevented contact).

Ultimately, Clayton and Maggie have the burden of proving their case by clear and convincing evidence. *See* Iowa Code § 600A.8. This is a significant burden—the highest burden in civil cases. We impose this burden on the petitioners to prevent an erroneous and irreparable deprivation of a parent's right to raise his or her children. We note Heather is close to coming current on her child-support obligation. Moreover, she has taken steps to overcome her prior impediments: she has ended an abusive relationship, remained employed, and has begun managing her mental illness. We trust resolution of this case will encourage both sides to foster a relationship between Heather and the children. It is now incumbent on Heather to take advantage of this opportunity.

**REVERSED AND REMANDED.**