# IN THE COURT OF APPEALS OF IOWA

No. 19-1673
Filed July 1, 2020

**IN THE INTEREST OF M.S.,**
**Minor Child,**

**S.R., Mother,**
　　Petitioner-Appellee,

**C.S., Father,**
　　Respondent-Appellant.
_____

　　Appeal from the Iowa District Court for Marion County, Dustria A. Relph, Judge.


　　The father appeals the termination of his parental rights in a chapter 600A (2017) termination action.  **AFFIRMED.**


　　Blake D. Lubinus of Lubinus & Merrill, P.L.C., Des Moines, for appellant father.

　　Mark Simons of Simons Law Firm, PLC, West Des Moines, for appellee mother.

　　A. Edie Bogaczyk of Bogaczyk Law Firm, PLC, Clive, attorney and guardian ad litem for minor child.


　　Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

The father appeals the termination of his parental rights to his child, ten-year-old M.S., in an Iowa Code chapter 600A (2017) termination action. The district court found the father had abandoned M.S. pursuant to section 600A.8(3)(b), and termination of the father's rights was in M.S.'s best interests. The father challenges each of those conclusions on appeal.

We review private termination proceedings de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted). "The Iowa legislature requires the best interest of the child 'to be the *paramount consideration* in interpreting' the private termination of parental rights." *Id.* (quoting Iowa Code § 600A.1). But "[t]he parents' interest must also be given due consideration." *Id.*

"Private termination proceedings under Iowa Code chapter 600A are a two-step process." *Id.* First, we must determine if the petitioning parent proved grounds for termination. *Id.* Then, if those grounds are proved, we must consider whether termination of the parent's rights is in the child's best interests. *Id.* The petitioning parent must prove both steps by clear and convincing evidence for the court to order termination of parental rights. *Id.*

Here, the juvenile court found the father abandoned M.S., as provided for under section 600A.8(3)(b), which allows for termination based upon abandonment, and provides:

> [A] parent is deemed to have abandoned the child unless the parent does all of the following:
> . . . .

b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

These parents were divorced in January 2016. Pursuant to their stipulated decree, the mother had physical care of M.S. and the father had scheduled visitation time every other weekend. But visitations between father and child were sparse. At the time of trial in August 2019, visitation between the father and child had last occurred in October 2016.

Primarily because of the father's minimal contact with the child between 2016 and 2017, the father's parental rights to M.S. were terminated in a 2017 termination proceeding. Our court reversed that termination in *In re M.S.*, No. 17-1174, 2018 WL 4627819, at *3 (Iowa Ct. App. Sept. 26, 2018), after deciding the father had not been adequately informed of his right to counsel. We remanded the case to the district court with instructions the father should be properly served, with proof of service placed in the record, "prior to any rehearing on the merits of the petition to terminate [his] parental rights." *M.S.*, 2018 WL 4627819, at *3. The father's rights were reinstated by way of this court's reversal of the 2017 termination, but the father still did not have any contact with M.S. between the

reinstatement in October 2018 and the second termination hearing in August 2019. It is unclear whether the father was allowed to have contact with the child during this time.[1] At least once during the pendency of the first termination case, in 2016, the court in the dissolution proceedings suspended the father's right to visitation after M.S. alleged the father had shown her videos of the father and stepmother engaging in sexual acts. But his right to visitation was reinstated in August 2016. We have no knowledge or record of any order that prevented the father from having contact with M.S. once our court reversed the termination of the father's parental rights in September 2018. Testimony at the August 2019 termination hearing indicated the father had filed a motion in the dissolution case in November 2018 to have his right to visitation reinstated, which the mother resisted, but apparently that motion had not yet been heard as of the 2019 termination hearing.[2]

---

[1] Our review is hindered by the fact that these parents were apparently litigating their respective rights to the child—including the father's right to visitation with M.S.—in both the termination case and in the dissolution case. But neither party asked the termination court to take judicial notice of the dissolution case, so we have only passing knowledge of the state of the dissolution case as it pertains to the termination hearing.

[2] The father inappropriately included his motion to reinstate and the mother's resistance in the appendix on appeal. These filings were never admitted as exhibits in the termination proceedings and neither party asked the termination court to take judicial notice of the dissolution proceedings, so they are not properly part of the record before this court on appeal. *See* Iowa R. App. P. 6.801 ("Only the original documents and exhibits filed in the *district court case from which the appeal is taken*, the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court constitute the record on appeal." (emphasis added)); *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992) ("We limit our review to the record made in the termination proceeding involving [the child in interest]."); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("[C]ounsel has referred to matters apparently not a part of the record of this appeal. We admonish counsel to refrain from such violations of the rules of appellate procedure. We are limited to the record before us and any matters outside the record on appeal are disregarded."). We have not considered these filings in making our ruling. *See generally* Iowa R. App. P. 6.905

Based on the record before us, the father had a right to visit the child from the August 2016 reinstatement of his right to visitation in the dissolution court until the July 2017 order terminating his parental rights. He again had the right to visit the child from at least the time procedendo issued on our ruling reversing the termination of his rights—in October 2018—until the district court issued the second termination of his rights in September 2019. But the father saw the child only two times during those periods: during an August 2016 visitation and again in October 2016, when the mother brought the child to the funeral of the paternal grandfather. Now, on appeal, the father urges us to conclude his lack of contact with the child is the mother's fault because she did not want him to spend time with the child. But the father offered no evidence that he attempted to see the child more and was thwarted by the mother.[3] And he admitted he did not file a contempt action against the mother to have his right to visitation enforced. *See In re W.W.*, 826 N.W.2d 706, 710–11 (Iowa Ct. App. 2012) (finding lack of contact with the children constituted abandonment where parent failed to pursue legal options to institute visitation). While his November 2018 motion to reinstate visitation may be understood as an attempt to use legal means to enforce his right to visitation, that motion had not yet been heard nearly one year later because, according to the

---

(providing how to include parts of the district court record in an appendix for appeal).

[3] The father and his current wife testified as to some instances when he traveled to pick up the child and the mother did not bring her to the drop off point. However, the guardian ad litem (GAL) testified the father had never made this claim before, and the termination court did not find the father's claim credible. We agree with this finding. Additionally, we note these purported instances all appear to be prior to the 2017 termination. They would not explain the father's lack of contact following the reversal of the termination his rights.

father's testimony, he had some concern about being held in contempt for failing to pay the mother's legal fees as ordered in a previous proceeding.

Based on this record, we agree with the juvenile court that the father failed to visit M.S. at least monthly during the times he was allowed to do so. The father abandoned M.S. pursuant to section 600A.8(3)(b).

Next, we consider whether termination of the father's parental rights is in M.S.'s best interests. In private terminations, we consider the best-interests definition provided by the legislature in section 600A.1 and also "borrow[] from the statutory best-interest framework outlined in Iowa Code chapter 232." *B.H.A.*, 938 N.W.2d at 232. The chapter 232 framework directs this court to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

M.S. is a child who has suffered trauma, even before the dissolution of her parents' marriage and any of the incidents that followed, and she has extra needs for some of her mental and behavioral issues. To that end, M.S. sees a number of professionals, including a therapist M.S. has seen since 2014 and a pediatric nurse practitioner who works in behavioral health. The nurse practitioner testified at trial that M.S. "didn't want to see her father again. She was afraid of him. She told me that he touched her inappropriately. That's how she said it, and she just didn't want anything to do with him and she was afraid of him." The GAL, who met with M.S. first in May of 2017 and then again in August 2019, testified that M.S. is a much happier, more self-confident child in 2019 than she was in 2017. The GAL

seemed to attribute this to the lack of contact M.S. has had with the father, and she supported the termination of the father's parental rights.

The district court concluded, "In this case, the court has no question as to whether it is in [M.S.'s] best interest to terminate her father's parental rights. The heavy, heavy preponderance of the evidence was clear and convincing that [M.S.'s] relationship with her father is unhealthy and downright harmful to her." We agree that termination of the father's rights is in M.S.'s best interests.

**AFFIRMED.**