# IN THE COURT OF APPEALS OF IOWA

No. 20-0616
Filed January 21, 2021

**IN THE INTEREST OF K.K.,**
**Minor Child,**

**B.D., Mother,**
　　　Petitioner-Appellee,

**D.K., Father,**
　　　Respondent-Appellant.
_____


　　　Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.


　　　The father appeals the termination of his parental rights in an Iowa Code chapter 600A (2019) termination action.　**AFFIRMED.**


　　　Robert F. Bozwell Jr., Centerville, for appellant father.

　　　Cynthia D. Hucks of Box & Box Attorneys at Law, Ottumwa, for appellee mother.

　　　Mary Baird Krafka, Ottumwa, attorney and guardian ad litem for minor child.


　　　Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**GREER, Judge.**

Citing abandonment, the mother petitioned to terminate the parental rights of the father to their four-year-old child, K.K. The juvenile court agreed and terminated the father's rights under Iowa Code section 600A.8(3)(b) (2019). The father challenges that order and maintains he did not abandon the child but the mother and a no-contact order stood in his way. He also asserts that termination is not in the child's best interests.

We review private termination proceedings de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted). "The Iowa legislature requires the best interest of the child 'to be the *paramount consideration* in interpreting' the private termination of parental rights." *Id.* (quoting Iowa Code § 600A.1). But "[t]he parents' interest must also be given due consideration." *Id.*

"Private termination proceedings under Iowa Code chapter 600A are a two-step process." *Id.* First, we must determine whether the petitioning parent proved grounds for termination. *Id.* Then, if those grounds are proved, we must consider whether termination of the parent's rights is in the child's best interests. *Id.* The petitioning parent must prove both steps by clear and convincing evidence for the court to order termination of parental rights. *Id.*

*Grounds establishing abandonment.*

The relationship of these unmarried parents was brief. They were together for a short time before the child's birth in early 2016 and until the child reached four or five months of age. Once separated, the father continued visits. To establish

paternity and custody, the mother petitioned and received a decree establishing joint legal custody. The mother retained physical care of the child, while the father received visitation rights and a child-support obligation. The father did not attend that proceeding. The decree framed the legal rights of the parents starting in August 2017. From August to December, the father maintained regular visitation. Starting in 2018, the father's visits became more sporadic with the last visit between father and child occurring in July of that year.[1] Communication between the parents soured and often the father would not respond to the text messages sent by the mother trying to arrange visitation. Although the mother tried to arrange a visit for the father in September, the father failed to show up.

But in October 2018, the father requested a visit and the mother asked him to take a drug test first because she thought he had not been acting normal. The father then started sending ominous text messages to the mother and another person, which, along with other inappropriate actions, prompted the mother to call the authorities. Law enforcement charged the father with harassment. An order of protection issued prohibiting contact between the parents, but it did not restrict the father from contact with his child.[2] Even though the protective order noted no restriction on communication with the mother through legal counsel, the father testified that the order restricted his ability to visit his child. Other than arguing the no-contact order thwarted visitation, the father offers no evidence that he tried to arrange visits or contact the child by other means, such as pursuing legal options

---

[1] The last visit noted by the mother in her written timeline was on July 6, 2018.
[2] The order of protection issued on October 19, 2018, and it was originally in effect for one year. It was later extended for a second year.

to re-institute visits. *See In re W.W.*, 826 N.W.2d 706, 710–11 (Iowa Ct. App. 2012) (finding lack of contact with the children constituted abandonment where parent failed to pursue legal options to institute visitation). In August 2019, after more than a year passed with no visit between the child and father, the mother petitioned for a termination of the father's parental rights.

Additionally, the mother testified the father provided no financial support for the child other than some diapers and a small amount of money for day care expenses. At first, the father agreed to pay one-half of the day care expense. But he never made good on the promise. And the court record reflects no formal payment of child support. Explaining his failure to pay the court-ordered child support, the father claimed to have never received a copy of the decree. Yet the court file referenced a mailing to the father at his known address. And although the father's employment has been inconsistent, he has maintained work off and on over the years he was ordered to pay child support. And often, he used work as an excuse for why he could not attend a visitation. It is also compelling that the father never sent a card or gift to the child. On the other hand, the paternal grandmother visits the child at the mother's home frequently.

Section 600A.2(20) defines "[t]o abandon a minor child" as when "a parent . . . rejects the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." The parental mental state hinges on the parent's conduct in rejecting parental duties. *See id.* The juvenile court determined that

the father abandoned the child under Iowa Code section 600A.8(3)(b). Section 600A.8(3)(b) provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The grounds for abandonment by the father were established. To put it simply, at the time of trial, the father had not seen the child or attempted to see the child for about one year and seven months. Likewise, he sent no cards or gifts to the child to bolster the father/child relationship. Finally, the father provided no financial support, let alone his court-ordered responsibility to cover the basic expenses of child-rearing. The mother met the first hurdle to the termination quest.

*Best interests of the child.*

With grounds for abandonment established, we last look at whether termination of the father's rights is in the best interest of the child. The mother testified that the child would not have any idea who the father was if she saw him at the time of the trial. In October 2019, the mother married, and her husband is willing to adopt the child. They have known each other since 2014 and have a stable relationship and household. The child refers to the stepfather as "dad."

While the paternal grandmother has maintained contact, that relationship is not relevant to the status of the father's relationship with the child. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998) (noting that even where the paternal grandmother initiated visitations for the father, his indifference was the focus of the best-interest analysis). But here the mother proved by clear and convincing evidence that the termination of the father's parental rights was in the best interest of the child. *See B.H.A.*, 938 N.W.2d at 232. The best interest of the child requires the parent to "affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1. The past performance of the father answers this question. The father produced no compelling evidence to support a determination it is in the child's best interests that he retains his parental rights and did not even show a bond between him and the four-year-old child. Considering the best interest of the child, we choose proven stability over promises.

We affirm the juvenile court order terminating the father's rights.

**AFFIRMED.**