# IN THE COURT OF APPEALS OF IOWA

No. 21-0397
Filed January 12, 2022


**IN THE INTEREST OF L.W. and L.W.,**
**Minor Children,**

**A.W., Guardian,**
    Petitioner-Appellant,

**D.W., Father,**
    Respondent-Appellee.
_____


Appeal from the Iowa District Court for Mills County, Scott Strait, District Associate Judge.


A guardian appeals the district court order declining to terminate a father's parental rights to his two children under Iowa Code chapter 600A (2020). **AFFIRMED.**


Robert S. Sherrets and Diana J. Vogt (pro hac vice) of Sherrets Bruno & Vogt, LLC, Omaha, Nebraska, for appellant guardian.

Dawn Landon, Glenwood, for appellee father.

Keith R. Tucker of Woods, Wyatt & Tucker, PLLC, attorney and guardian ad litem form minor children.


Considered by Mullins, P.J., and Schumacher and Ahlers, JJ.

**MULLINS, Presiding Judge.**

A guardian appeals the district court order declining to terminate a father's parental rights to his two children under Iowa Code chapter 600A (2020).[1]  D.W. is the father of the two children at issue.  A.W. is the sister of D.W. and serves as a co-guardian to the two children with her mother, the paternal grandmother.

**I.      Standard of Review**

"We review termination proceedings under Iowa Code chapter 600A de novo."  *In re Q.G.*, 911 N.W.2d 761, 769 (Iowa 2018).  "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering the credibility of witnesses."  *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020) (quoting *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998)).  The best interests of the children is our paramount concern.  Iowa Code § 600A.1(1).

**II.      Factual Background**

The two children, now ages ten and twelve, were living with D.W. in Virginia in August 2017, when he learned he was going to be arrested and faced prison for a third time.[2]  At his request, A.W. went to Virginia and brought the children back to Iowa to be in the care of the paternal grandmother, P.W.  D.W. was thereafter arrested, jailed, and ultimately sent to prison in Virginia for distribution of

---

[1] The guardian also appeals the district court's denial of her petition to terminate the mother's parental rights.  The district court found that termination would not be in the best interests of the children, but it made no finding concerning abandonment.  The guardian did not file a post-trial motion to obtain a ruling on abandonment.  Without a ruling on abandonment, the guardian has not preserved the issue for appellate review.  *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

[2] As a young man, D.W. was imprisoned for conviction of sexual abuse and around 1999 for witness tampering.

methamphetamine.  In September, an Iowa court appointed P.W. guardian of the children.

D.W. testified at trial that he called his children at P.W.'s home until August of 2018, when she stopped accepting his phone calls.  In December 2018, A.W. was appointed co-guardian, and the children began living with her because P.W.'s health did not allow her to continue daily care of the children.  The next time D.W. was able to make contact with the family was in December 2019, when he was told to stop calling or trying to contact the children because his contacts were upsetting to them.

In March 2020, anticipating D.W. was going to be discharged from prison, A.W. obtained ex parte no-contact orders prohibiting D.W. from having any contact with A.W. or the children, together with other related ordered limitations on his ability to learn about the children, including sealing the addresses of A.W. and P.W. and her husband.  Two months later, A.W. filed termination-of-parental-rights petitions in the case now before us.

Additional facts will be developed below.

**III.    Analysis**

A.      Section 600A.8

Terminations of parental rights pursuant to chapter 600A follow a two-step process.  *B.H.A.,* 938 N.W.2d at 232.  The petitioner "must first prove by clear and convincing evidence the grounds for ordering termination of parental rights."  *Id.* (citing Iowa Code § 600A.8).  "For the second prong, [the petitioner] must prove by clear and convincing evidence that termination is in the best interest of [the children]."  *Id.*

In this case, A.W., as co-guardian, alleged the father abandoned the children, failed to provide support without good cause, and demonstrated an inability to exercise parental duties in the best interests of the children.

In relevant part, section 600A.8(3) provides:

> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> . . . .
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> . . . .

Iowa Code § 600A.8(3)(b). The statute is clear that both regular communication with either "the child or with the person having the care or custody of the child," *and* financial support are required in order to satisfy the first prong of the two-step process for termination of parental rights.[3] *Id.*; *see B.H.A.*, 938 N.W.2d at 232. The best-interest analysis cannot begin until the first prong is satisfied.

B.    Application

The district court made the following findings: "It is conceded that [D.W.] has not had contact with the children for an extended period of time and has not provided financial support to the children." The court did not further analyze the support issue. "What is at issue is whether he was prevented from maintaining

---

[3] "Section 600A.8(3)(b) is not limited to court-ordered support payments; those types of payments are the subject of a separate provision" of section 600A.8. *In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012). "Our courts have long held that all parents are legally obligated to support their children." *B.H.A.*, 938 N.W.2d at 234 (quoting *In re H.S.*, 805 N.W.2d 737, 745 (2011)).

contact with the children or the persons having care or custody of the children and whether that obstruction mitigates the claim for abandonment." The district court also discussed the high level of animosity between D.W. and A.W., writing "[t]here is no doubt to this court that [A.W.] has taken steps to prevent the children from having any ongoing relationship with their father and fully believes such separation is wholly justified." The court had the opportunity to observe the demeanor and conduct of the parties and the witnesses, and ultimately found that, although A.W.'s fear of D.W. was justified, as were her efforts to prevent contact between D.W. and the children, she could not rely on her purposeful efforts and court involvement in those efforts to support abandonment.

The district court found the case factually similar to a chapter 600A case presented before this court in 2018. *See In re H.N.M.*, No. 17-1802, 2018 WL 2731643, at *1 (Iowa Ct. App. June 6, 2018). In that case, a mother and father cooperated to raise a shared child until the mother entered into a romantic relationship with another man. *Id.* The mother then married and moved with the child to Iowa without telling the father, enrolled the child in school using her current husband's last name, told the child that the current husband was the child's father, and took targeted steps to conceal the child's whereabouts from the father. *Id.* After successfully preventing the father from taking part in the child's life, the mother sought to terminate the father's parental rights based on alleged abandonment pursuant to chapter 600A in 2014, and again in 2017.[4] *Id.* The

---

[4] The first attempt at termination pursuant to chapter 600A was denied, as was the second. However, when this court considered the case on appeal, our decision rested on the fact that the mother failed to prove that termination was in the best interests of the child. *H.N.M.*, 2018 WL 2731643, at *7.

district court made special note that the mother took pride in the fact "that she ha[d] refused and would continue [to refuse] all requests for visits or communication between the father and the child." *Id.* at *4.

At the district court, and now on appeal, A.W.'s arguments focus on her beliefs concerning the best interests of the children and her observations and opinions that D.W. had not been a good father to the children when they were in his care. Based on our review of the record, we understand A.W.'s concerns about how D.W. had parented the children and the condition of the children when she brought them to Iowa from Virginia. Those facts and a brief family history summarized below set the stage for muddying the waters of A.W.'s views of her obligations as a guardian.

The relationship between D.W. and A.W. fractured in 1999, when their mother and A.W. witnessed D.W. assault the woman who was his wife at that time. Following the assault, D.W. threatened the lives of A.W. and their mother if they chose to provide testimony against him, resulting in D.W.'s imprisonment for witness tampering. Although D.W. communicated with his parents, A.W. discontinued contact with D.W. for nearly twenty years until 2017, when she became aware that D.W. and the children were homeless in Virginia. At that time, the paternal grandparents and A.W. began to provide financial support to D.W. and the children. A.W. met the children for the first time in May of 2017 while on a work trip. She provided the children with clothing and food. When D.W. faced criminal charges that led to incarceration that same year, A.W. returned to Virginia in August 2017 to retrieve the children so they could be transported to Iowa to live with the paternal grandmother, P.W. In September, P.W. was appointed as

guardian of the children. Over time, P.W.'s health deteriorated, and A.W. became co-guardian of the children in late 2018. The children moved into A.W.'s home but spent time after school at P.W.'s home.

When the children began school in Iowa in 2017, A.W. began to discover the extent of the damage the children had suffered over the years due to the father's parenting. The children were both behind in school because they had not been properly enrolled or transported to school on a regular basis. They were malnourished, and the older child confessed to consuming the father's beer when it was the only drink in the family's refrigerator. The older child also exhibited angry outbursts at school and at home toward the younger child. At trial, D.W. denied the allegations of neglect, but admitted during the last couple of years leading up to his 2017 arrest and incarceration he was regularly using methamphetamine, drinking "a lot" of alcohol, and occasionally using cocaine.

Notwithstanding this ugly history, we circle back to the legal framework for a section 600A.8(3)(b) termination and emphasize the threshold issues legislatively mandated: abandonment as demonstrated by lack of support and regular communication with the child or person having care of the child unless "prevented from visiting the child by the person having lawful custody of the child." We recognize that a parent must suffer the consequences of their choices "when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). "The general rule is that unavailability of a parent due to incarceration is no excuse for the lack of a meaningful bond." *Q.G.*, 911 N.W.2d at 772. And A.W. tried at the hearing in this case to blame D.W. for not trying harder to contact her, while at

the same time trying to make a compelling case for why she would not, did not, and will not allow him to contact her or the children. She is trying to hold him accountable for his failings, while trying to avoid her accountability. The record is undisputed that, prior to August 2017, D.W. had custody of the children and was their caretaker and, after A.W. took the children to Iowa, he talked with the children by telephone nearly weekly, until he was denied further contact in August 2018.

To be clear, we are not rendering an opinion on the propriety of A.W.'s intense efforts to stop D.W.'s contact with her or the children.[5] That issue is not before us. The sole threshold issue we are deciding is abandonment.[6] A finding that D.W. abandoned his children cannot be supported on this record. We agree with the findings and conclusions of the district court.

**AFFIRMED.**

---

[5] We acknowledge the children are thriving in the care of the paternal aunt who is providing daily care for the children, including educational, medical, and mental-health services.

[6] This is not a chapter 232 termination case, but if it were, a myriad of procedural and substantive safeguards would be in play for the benefit of the children and D.W.