**IN THE COURT OF APPEALS OF IOWA**

No. 23-0091
Filed May 24, 2023

**IN THE INTEREST OF J.T.A.,**
**Minor Child,**

**H.K., Mother,**
        **Petitioner-Appellee,**

**T.A., Father,**
        **Respondent-Appellant.**
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A father appeals the termination of his parental rights in a private termination proceeding. **AFFIRMED.**

Joseph G. Martin, Cedar Falls, for appellant father.

Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC, Cedar Falls, for appellee mother.

Melissa Marie Ament of Timothy D. Ament Law Firm, P.C., Waterloo, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

T.A., the father of the child at interest, J.T.A., appeals the juvenile court order terminating his parental rights in a private termination proceeding. He claims the court erroneously found he abandoned the child. He also contends termination is not in the child's best interests. We find clear and convincing evidence supports the court's determination that T.A. abandoned the child. Termination is in the child's best interests. Accordingly, we affirm.

## I.      Background Facts & Proceedings

T.A. and H.K. married in 2015. J.T.A. was born in 2016. The parents divorced in 2017. The parents were granted joint legal custody and joint physical care of J.T.A. pursuant to a parenting plan incorporated into a dissolution decree. That original parenting plan did not contain a parenting schedule. In August 2018, the decree was modified to award H.K. physical care of the child. T.A. was awarded visitation on alternating weekends and every Wednesday. Following the modification, T.A. initially participated in visits according to the schedule. He was not required to pay child support.

H.K. began a relationship with another man, C.K., in late 2017. They began residing together in 2018. They have remained in the same residence since 2018. They share a child together, born in 2020. They married in June 2022. J.T.A. calls C.K. her dad, and C.K. wishes to adopt J.T.A.

T.A.'s participation with J.T.A. substantially decreased around February 2019, when he moved to Florida.[1] He visited J.T.A. in late March, and appears to

---

[1] There was also some testimony that indicated he spent time in Oregon, although the timeline of his movements is less than clear based on the record before us.

have remained in contact with H.K. and J.T.A. through at least May. But all parties agree that his last contact with the child and H.K. occurred in June 2019. Following that, T.A. did not contribute financially to the child. He did not attempt to communicate with H.K., her parents, or C.K. H.K. believes J.T.A. would not recognize T.A. anymore. T.A. blames the lack of contact on his belief that H.K. blocked his phone number.

H.K. contacted T.A. in June 2022 to ask him to consent to the termination of his parental rights.[2] T.A. refused. As a result, H.K. petitioned to terminate T.A.'s parental rights in August 2022, alleging T.A. had abandoned the child. The termination hearing was conducted November 3. H.K., her husband, her father, and T.A. testified. The court also received a report authored by the child's guardian ad litem (GAL) that recommended the termination of T.A.'s parental rights. The court found T.A. abandoned J.T.A., that termination was in J.T.A.'s best interests, and terminated T.A.'s parental rights. T.A. now appeals.

## II.     Standard of Review

"We review private termination proceedings de novo. We give deference to the factual findings of the juvenile court, especially relating to witness credibility, but we are not bound by those determinations. Our primary concern in termination proceedings is the best interests of the child." *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012) (internal citations omitted).

---

[2] T.A. consented to the termination of his parental rights to two other children. He does not have contact with an additional child and disputes paternity of this child.

## III.    Abandonment

Proceedings for the private termination of parental rights are a two-step process; "[i]n the first step, the petitioner seeking termination must first show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights." *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018). We turn first to this threshold event. T.A. contends the court improperly found he had abandoned the child.

> A parent abandons a child who is six months of age or older, unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b) (2022).

T.A. argues he was prevented from communicating with the child because of his belief that H.K. blocked his phone number. But this court dealt with the same argument in *In re W.W.*, 826 N.W.2d 706 (Iowa Ct. App. 2012). In that case, our court held:

> The problem with [that] argument is that it overlooks the predicate language of section 600A.8(3)(b), which states that a parent is deemed to have abandoned a child "unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount."

*W.W.*, 826 N.W.2d at 710. The same is true here. T.A. conceded he did not provide financial support for the child.[3] And to the extent T.A. asserts that H.K. never asked for financial assistance, a parent has an obligation to support the child regardless of the other parent's disinclination to accept the resources. *See In re J.G.*, No. 21-1836, 2022 WL 2347775, at *4 (Iowa Ct. App. June 29, 2022). As such, T.A. abandoned J.T.A. within the meaning of section 600A.8(3).

Even if T.A.'s lack of financial support was not determinative, he failed to visit or regularly communicate with J.T.A. The juvenile court found T.A.'s assertions regarding his efforts to contact the child were not credible. We defer to that determination. *See G.A.*, 826 N.W.2d at 127. According to T.A., after attempting to contact H.K. in June 2019, he never attempted to make contact again.[4] He admits to having visited the area repeatedly since 2019, but did not visit H.K.'s home. He did not contact H.K.'s husband despite having his contact information. He never reached out to H.K.'s parents despite having their address and phone numbers and testifying that he had an amicable relationship with H.K.'s mother. *See In re T.K.*, No. 16-0029, 2016 WL 4384869, at *2 (Iowa Ct. App. Aug. 17, 2016) (concluding that the father's attempts to contact the mother were feeble at best when he knew of the mother's parents' home address, place of employment, and telephone number but did not attempt to call them or visit their

---

[3] That he was not obligated to pay child support under the dissolution and subsequent modification is irrelevant to the analysis under chapter 600A. *See W.W.*, 826 N.W.2d at 710.

[4] We note that H.K. was under no obligation to try to encourage contact. *See* Iowa Code § 600A.8(3)(c) ("[T]he court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraph 'a' or 'b'.").

home). And if H.K. was in fact preventing his access, T.A. never took legal action to enforce his visitation rights. *See W.W.*, 826 N.W.2d at 711. T.A.'s own version of events suggest he was not prevented from contacting the child, rather, he simply chose not to do so. We determine T.A. abandoned J.T.A.

## IV. Best Interests of the Child

"Once that threshold showing has been made," as we determine it has been here, "the petitioner next must show by clear and convincing evidence termination of parental rights is in the best interest of the child." *Q.G.*, 911 N.W.2d at 770; *see also* Iowa Code §§ 600A.1, 600A.8.

T.A. contends termination is not in the child's best interests. When considering a child's best interests, we consider the statutory best interest framework from Iowa Code section 232.116(2). *In re A.H.B.*, 791 N.W.2d 687, 690-91 (Iowa 2010).

We determine termination of T.A.'s parental rights is in the child's best interests. T.A. has no relationship with the child—he moved to Florida when the child was about two years old. T.A. acknowledged J.T.A. would not recognize him. *See id.* at 691 ("[I]t is significant that [the child] likely has no recollection of his father."). H.K. and C.K. testified that the child sees C.K. as her father, and C.K. wishes to adopt the child. *See J.G.*, 2022 WL 2347775, at *5 (noting that it was in the child's best interests to solidify a step-parent's role as caregiver when they had been performing that role for much of the child's life). Termination of T.A.'s parental rights is in J.T.A.'s best interests.

**AFFIRMED.**