# IN THE COURT OF APPEALS OF IOWA

—————————————

No. 25-0316
Filed February 25, 2026

—————————————

**In the Interest of J.B., Minor Child,**

**R.N., Mother**
Petitioner-Appellant,

**J.B., Father**
Respondent-Appellee.

—————————————

Appeal from the Iowa District Court for Marshall County,
The Honorable Hunter W. Thorpe, Judge.

—————————————

**REVERSED AND REMANDED**

—————————————

Melissa A. Nine of Nine Law Office, Marshalltown,
attorney for appellant mother.
Leah Patton of Patton Legal Services, LLC, Ames,
attorney for appellee father.
Norma J. Meade, Marshalltown,
attorney and guardian ad litem for minor child.

—————————————

Considered without oral argument
by Tabor, C.J., Badding, J., and Vogel, S.J.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

This case involves the future of now eleven-year-old J.B. Her mother describes her as a "fiery little redhead" who is "very eccentric, very smart." The last time she talked to her father was in November 2023 as he headed off to prison. He assured her that he was "going to come out a better man." She replied, "I hope so, Dad." But since his release in May 2024, he has not reconnected with J.B.

Against that backdrop, the mother appeals the denial of her petition to terminate the father's parental rights under Iowa Code chapter 600A (2024). The district court found that the mother proved abandonment but decided termination was not in J.B.'s best interests. In our de novo review, we disagree with the district court's best-interest analysis.[1] Thus, we reverse and remand for entry of an order terminating the father's parental rights. Although he does not prevail, under the statute's language, we grant the father's request for appellate attorney fees.

## I.    Facts and Prior Proceedings

J.B. was born in 2014. Her parents were together for about seven years but didn't marry. Her mother, "Rachel,"[2] has had sole legal custody of J.B. since 2019. Under that custody order, her father was required to pay $500 per month in child support and $147 per month in cash medical support.

---

[1] We review chapter 600A proceedings de novo. *In re J.V.*, 13 N.W.3d 595, 603 (Iowa 2024). We give weight to the district court's findings of fact, especially on witness credibility, but they do not bind us. *Id.*

[2] We use pseudonyms for the parties as allowed by Iowa Court Rule 21.25.

Rachel is a registered nurse. She and J.B. live in Marshalltown with J.B.'s half-brother.[3]

J.B.'s father, "Jordan," has a history of substance use and a criminal record, including a child endangerment conviction.[4] He last saw J.B. during the 2022 incident that led to his imprisonment for that conviction and last spoke to her on a jail call in 2023. He was still incarcerated when Rachel filed the petition to terminate his parental rights. But he now lives in Ames with his girlfriend and her three children. He is employed as a forklift driver.

In March 2024, Rachel petitioned for termination of Jordan's parental rights, alleging that he abandoned J.B. and failed to support his daughter financially. *See* Iowa Code § 600A.8(3)(b), (4). Two months later, the child's guardian ad litem (GAL) reported that J.B. favored terminating her father's parental rights: "she no longer wants to see him or talk to him."[5]

In January 2025, the termination petition came to trial. The district court heard from five witnesses: Rachel, Jordan, his younger sister,[6] his

---

[3] Rachel testified that she had been dating someone for five years but had no plans to marry him.

[4] Jordan was arrested in August 2022 for assaulting his girlfriend's twelve-year-old daughter in front of J.B. When police arrived, Jordan—who was intoxicated—picked up J.B. and used her as a "human shield" against the officers. After violating his probation, Jordan was sentenced to an indeterminate two-year prison term in October 2023. He was incarcerated until May 2024.

[5] The GAL's report also described Rachel's concerns over allegations by Jordan's sisters that he sexually abused them when they were children. Rachel told the GAL that she wanted to protect J.B. from any similar abuse and did not trust Jordan's mother to supervise visitations.

[6] The sister testified that Jordan touched her inappropriately when she was ten to twelve years old. The district court found her testimony was "credible and informed" but

girlfriend, and his mother. A month later, the district court dismissed the petition, finding termination of the father's rights was not in J.B.'s best interests because "his current trajectory is mostly positive." The mother appeals.

## II.    Analysis

Termination proceedings under chapter 600A have two prongs. *J.V.*, 13 N.W.3d at 603. The parent seeking to sever the other parent's rights must prove by clear and convincing evidence that (1) a ground for termination exists under section 600A.8 and (2) termination is in the child's best interests. *Id.* Evidence meets that test when we harbor no "serious or substantial doubts" as to the correctness of the legal conclusions drawn from it. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted).

In this appeal, the mother challenges the district court's conclusion on the second prong while the father contests the court's decision on the first prong.[7] We address both the statutory grounds and best interests.

### A. Statutory Grounds

The mother petitioned for termination on two grounds: abandonment under Iowa Code section 600A.8(3)(b) and lack of financial support under section 600A.8(4). The district court found that she proved the first ground but not the second. On appeal, the mother contends that she offered

"focused on events from several decades ago." The district court found the testimony lacked specificity and wasn't relevant to the grounds alleged in the petition.

[7] The prevailing party need not file a cross-appeal to assert an alternative ground for affirmance on appeal that was raised in the district court. *In re M.W.*, 876 N.W.2d 212, 221–22 (Iowa 2016).

substantial evidence to support termination under both subsections. On our de novo review, we agree with the mother.

## 1. Abandonment

Abandoning a child means rejecting "the duties imposed by the parent-child relationship" while being able to provide for the child. Iowa Code § 600A.2(20). To prove abandonment for a child older than six months, the petitioning parent must show that the other parent has not maintained:

> substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> > (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> >
> > (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> >
> > (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b). Our court has described this statute as having a "cash component" and a "contact component." *See In re G.D.*, No. 20-0984, 2021 WL 2126174, at *3 (Iowa Ct. App. May 26, 2021). Reasonable economic contribution (the cash component) is the threshold element of substantial and continuous or repeated contact. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012).

So we start with Jordan's financial support for his daughter. Before going to prison, he was not making regular contributions. Any payments

made were through wage withholding. And Rachel testified that his jobs tended to be "under the table type stuff" where he could avoid garnishments. She recalled that when he did briefly have a job where wages were withheld, he lost it because of his alcohol use.

Jordan's obligation to support J.B. continued while he was incarcerated. *See In re B.H.A.*, 938 N.W.2d 227, 234 (Iowa 2020). But his monthly obligation was reduced from $500 to $50. On appeal, the father argues that he "nearly met his support obligation" when not in prison. A trial exhibit showed that in total he paid about half of what he owed in child support between 2019 and 2024. By trial, he owed around $18,000 in back child support. He testified that $139 per week was now being taken from his paycheck but he planned to make greater payments to wipe out the arrears.

The father's financial contributions fall far below a reasonable amount given his earning potential. The record shows that he made choices to limit his income to avoid paying child support. And worse, he committed crimes that landed him in prison, more dramatically restricting his ability to support J.B. *See In re A.M.*, No. 02-1085, 2003 WL 21696957, at *2 (Iowa Ct. App. July 23, 2003) ("[I]ncarceration provides no excuse for an absent parent's failure to provide the comfort, guidance, and support owed by a parent to his children."). We thus find that he has abandoned J.B. under the predicate language of section 600A.8(3)(b). *See W.W.*, 826 N.W.2d at 710.

Even if Jordan's minimal efforts to support J.B. financially do not end the matter, we are persuaded that his failure to engage with her in other ways supports a finding of abandonment. As the district court found, while in prison, Jordan had no communication with J.B.: no visits, no letters, and no phone calls. Even when released from prison, his attempts at communication with his daughter were "sparse"—consisting of around five text messages sent to Rachel in August 2024. And we agree with the district court that

Rachel did not prevent Jordan's contact with their daughter within the meaning of Iowa Code section 600A.8(3)(b).

## 2. Failure to Pay Child Support as Ordered

On the second ground, the district court found that the mother did not carry her burden under section 600A.8(4) to show that the father failed to contribute to the support of the child without good cause. We disagree.

First, paragraph (4) doesn't require a total absence of support payments. Rather, the evidence must support a finding that the parent failed to pay "the ordered support" without good cause. *See In re R.K.B.*, 572 N.W.2d 600, 601–02 (Iowa 1998). Under the 2019 custody order, Jordan was required to pay $500 per month child support and $147 per month cash medical support. Overall, he paid only half of the child support ordered and less than a quarter of what was due in 2023 and 2024.

The record does not show that Jordan had good cause for his poor payment record. He was forty-two years old at the time of trial and in good enough physical health to work on a loading dock. Granted, he struggled with mental-health and substance-use issues throughout his adult life. But much of his failure to pay the court-ordered support can be attributed to willful avoidance or his conscious decision to commit crimes rather than be a responsible parent. *See In re B.L.A.*, 357 N.W.2d 20, 23 (Iowa 1984) (finding father "deliberately set out to avoid his support obligation"). On our record, we find that the father failed to pay a substantial amount of support owed without good cause.

## B. Bests Interests

Iowa Code section 600A.1 defines the "best interest of a child" as requiring "that each biological parent affirmatively assume the duties encompassed by the role of being a parent." In deciding whether a parent has done so, we consider this non-exclusive list of factors: "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." Iowa Code § 600A.1.

The statutory best-interest framework from Iowa Code chapter 232 is also relevant. *In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). That framework directs us to "give primary consideration to the child's safety" and to "the best placement for furthering [the child's] long-term nurturing and growth." Iowa Code § 232.116(2). We also consider the child's emotional and psychological health and the closeness of the parent–child bond. *B.H.A.*, 938 N.W.2d at 233.

The district court concluded: "The best interest analysis in this case is close." Again, we disagree. We look to J.B.'s safety first. We are troubled by the father's long history of assaultive and threatening behavior. He acknowledged having over a dozen no-contact orders against him since he was seventeen years old. When he was still having visitation with J.B. before going to prison, he told the child that he was going to shoot her mother. Jordan also threatened to shoot Rachel's boyfriend "down his throat," resulting in a charge for first-degree harassment. The father rationalized his behavior by saying the victim "pushed him to the limit" that day. The father also blamed his aggressive behavior on his excessive alcohol consumption: "I am a monster when I drink." His candor is cold comfort. Especially when the

father also testified that he believed that he could maintain his sobriety without any sort of treatment, aftercare, or support.

Our concern for J.B.'s safety is heightened by the sexual abuse recounted by Jordan's younger sister. She recalled Jordan touched her inappropriately on several occasions between when she was ten and fourteen. Later, she found that Jordan also inappropriately touched their other sister. Family relationships were strained because of those allegations, but they were never reported to authorities. And, although she had only spoken to her brother once since he was released from prison, she said, "I don't think that he would touch his own daughter or anything," qualifying that assurance with, "but just when he is drinking."

The district court found the allegations "are not dispositive to any issue before the court" and did not "go to the grounds alleged" in Rachel's petition. Yet the court also found the sister credible. We defer to the district court's credibility findings and can't ignore those molestation allegations when deciding whether Jordan could be a safe parent to J.B. We also note that Jordan's mother—who supervised his visits with J.B. in the past—didn't believe her daughter's allegations of abuse. As our supreme court has said: "It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists." *In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021).

Turning to the other factors in the best-interests analysis, after 2019, Jordan did not shoulder the duties associated with parenting. As detailed above, he did not fulfill his financial obligations. He paid only half the child support owed.[8] Likewise, his problem drinking and his criminality did not

---

[8] The district court reasoned that "[c]utting off additional financial support can rarely be in the best interest of the child." But the father was not a reliable source of economic assistance. And the safety risk he posed to the child outweighed his minimal

demonstrate a continued interest in J.B. And he did not demonstrate a genuine effort to communicate with her—thus the finding of abandonment. As J.B. told her GAL, she stopped wanting to see or talk to her father, evidence that he did not maintain a place of importance in her life. *See* Iowa Code § 600A.1.

In defending the district court's best-interests finding, the father points to his prior close relationship with J.B. But his point is not well taken. While they may have once had a bond, it no longer existed by the time of trial. When he asked to see J.B. after being released from prison, she told her mother that "she was scared of her dad and that she didn't want to go with him." For his part, the father denied that his daughter was ever scared of him. When asked about grabbing her when he was under arrest, Jordan said: "She was scared of the police officers. She didn't want them to take her dad." We find his reframing of that event to be emblematic of his inability to protect the child's emotional and psychological health. *See B.H.A.*, 938 N.W.2d at 233. Contrary to the district court's conclusion, termination of the father's parental rights is in J.B.'s best interests.

Finally, Jordan notes that Rachel's "significant other is not in a position to adopt the child now or in the foreseeable future." But the absence of a stepparent waiting to adopt does not overcome the evidence supporting termination. *B.H.A.*, 938 N.W.2d at 235–36.

---

financial investment. *Cf. In re H.S.*, 805 N.W.2d 737, 748–50 (Iowa 2011) (finding "potential loss of child support" is not "a component of the section [232].116(2) best interest test").

### C. Appellate Attorney Fees

Both parties request appellate attorney fees. But neither cites the governing statute. We can only assess fees authorized by statute. *In re R.S.N.*, 706 N.W.2d 705, 708 (Iowa 2005). Section 600A.6B governs the payment of attorney fees.[9] *In re E.E.*, No. 21-0034, 2021 WL 3907807, at *6 (Iowa Ct. App. Sept. 1, 2021). And that statute applies only to appointed counsel. *In re N.C.*, No. 21-1268, 2002 WL 2160675, at *6 (Iowa Ct. App. June 15, 2022).

Because only the father had appointed counsel, the attorney fee statute does not apply to the mother's request. *See id.* As for the father's request, the statute requires the mother to pay his reasonable attorney fees. *See W.W.*, 826 N.W.2d at 713 ("The statute . . . does not require the indigent party to have prevailed as a prerequisite to shifting the payment of fees to the non-indigent private person who filed the petition."). The district court shall determine the fee amount on remand.

### REVERSED AND REMANDED.

---

[9] Applicable here is section 600A.6B(1), which states:

> A person filing a petition for termination of parental rights under this chapter shall be responsible for the payment of reasonable attorney fees for services provided by counsel appointed pursuant to section 600A.6A in juvenile court or in an appellate proceeding initiated by the person filing the petition unless . . . the court determines that the person filing the petition is indigent.